UNITED STATES of America, Appellee,

v.

Ramon MARTINEZ, Defendant–
Appellant.

No. 164, Docket 94–1082.

United States Court of Appeals,
Second Circuit.

Argued Oct. 12, 1994.

Decided May 9, 1995.

with Judge Calabresi concurring and Judge Walker dissenting, concluded that the evidence of intent to distribute was insufficient, vacated the convictions under 18 U.S.C. §§ 841(a)(1) and 924(c), and ordered entry of a judgment of conviction for simple possession under 21 U.S.C. § 844. Thereafter, while a poll to hold an *in banc* rehearing was being conducted, Judge Calabresi reconsidered his earlier decision and voted to affirm the convictions on all counts. Therefore, with the issuance of this opinion, the earlier decision in this case, reported at 44 F.3d 148 (2d Cir.1995), is vacated, the mandate is withdrawn, and a new mandate affirming the judgment of the district court in all respects will issue.

Mark B. Gombiner, New York City (Legal Aid Soc., New York City, on the brief), for defendant-appellant Ramon Martinez.

James A. Goldston, Asst. U.S. Atty., New York City (Mary Jo White, U.S. Atty., David B. Fein, Asst. U.S. Atty., New York City, on the brief), for appellee U.S.

Before NEWMAN, Chief Judge, WALKER, and CALABRESI, Circuit Judges.

Judge CALABRESI concurs and Chief Judge NEWMAN dissents in separate opinions.

WALKER, Circuit Judge:

This appeal presents the single question whether the evidence of intent to distribute narcotics was sufficient to allow that issue to be decided by a jury. Ramon Martinez appeals from a judgment of the United States District Court for the Southern District of New York (Leonard B. Sand, *Judge* ) convicting him, after a jury trial, of one count of possession of cocaine with intent to distribute, 21 U.S.C. § 841(a)(1), one count of using and carrying a firearm in relation to a drug trafficking crime, 18 U.S.C. § 924(c), and one count of possession of a firearm by a felon, 18 U.S.C. § 922(g).

On January 4, 1995, a divided panel, in a majority opinion by Chief Judge Newman,

## BACKGROUND

Taken in the light most favorable to the Government, the evidence permitted the jury to find the following facts. In late March, 1993, a confidential informant told the police that a man named "Juan" was dealing drugs out of Apartment 4E at 134 Elliott Place in the Bronx. Based on the informant's tip, officers of a joint federal-state task force obtained a "no-knock" search warrant for the apartment. On March 25, 1993, in preparation for executing the search warrant, Detective Gerard Gardiner and other law enforcement officers entered the building and set up a hydraulic ram in front of the door to the apartment. As the officers began breaking down the door, they heard a man inside, later identified as José Garcia, yell "policia" (Spanish for police) and saw a man, later identified as appellant Ramon Martinez, holding a gun.

Once inside the apartment, the officers observed only Garcia and Martinez. Garcia was standing in the kitchen and the defendant Martinez, holding the loaded gun, was standing in the living room. Martinez began running to the back of the apartment, still carrying the gun in his hand. Detective Gardiner pursued Martinez to the rear bedroom, where he witnessed Martinez throw the pistol out the window. Martinez then reached toward the groin area of his pants as if to remove something. The detective apprehended Martinez and seized from his per-

son a black leather pouch containing five bags of white powder. One bag turned out to contain an eighth of an ounce (about 3½ grams) of cocaine, while the other four contained a total of one-half ounce of "cut," a non-narcotic powder commonly used to dilute cocaine. A further search of Martinez revealed a small hand-held scale capable of weighing amounts up to one gram.

Detective Gardiner then searched Garcia, but found no contraband or weapon on Garcia's person. Gardiner acknowledged, however, that "to a very specific degree" Garcia matched the description of the dealer "Juan" given by the informant. Gardiner also learned at some point that "Juan" might be an alias for José Garcia. After taking Garcia into custody, Gardiner and the other officers searched the apartment. They found another eighth of an ounce of cocaine, a grinder, an electronic scale that could measure 100–gram quantities, a sifter used to mix cocaine with "cut," and tin foil in plain view on a table in the living room. In addition, the police discovered $1,078 in cash secreted inside the frame of a closet door. Following his arrest, Garcia gave as his address 130 Elliott Place and not 134 Elliott Place where the search and arrests took place.

At trial, Gardiner, testifying as an expert on narcotics trafficking, opined that the hand-held scale found on Martinez could be used to weigh small quantities of narcotics up to one gram and that cocaine is commonly sold in half-gram and one-gram quantities at the retail level. He further explained that "cut" is usually mixed with cocaine "for the purpose of increasing the drug dealer's profits as well as making cocaine ingestible without poisoning the person who is ingesting it." Detective Gardiner further testified that following Martinez's arrest, when "asked whether he used any drugs," the defendant "indicated to me that he did not."

In summation, Martinez, who did not testify or offer any evidence on the point, argued that he was a drug user who possessed for his personal use the cocaine found on his person. To support this argument, he pointed to a May, 1988 judgment of conviction that had been put into evidence by the government to prove that he possessed the firearm as a convicted felon. The judgment provided, as part of the sentence, that defendant's supervised release be conditioned upon his participation in a program of urinalysis testing and, if necessary, drug treatment.

The district court charged the jury that they could convict Martinez of the lesser included offense of simple possession. The jury rejected this option because they found the elements of the distribution offense established, and they also convicted Martinez on the other two counts of the indictment. The district court sentenced Martinez to a total of 78 months in prison: concurrent 18–month terms for drug-trafficking and possession of a firearm by a felon, and a consecutive 60–month term for the § 924(c) firearms offense.

## DISCUSSION

On appeal, Martinez contends that the evidence was insufficient to prove his intent to distribute cocaine. He argues that a finding of such intent may not be based on the 3½ grams of cocaine and the items in his possession, and that the additional 3½ grams of cocaine and the other items found on the table may not be attributed to him simply because he was on the premises.

 It is well settled that a defendant seeking to overturn a conviction based upon insufficiency of the evidence bears a "heavy burden." *United States v. Sureff,* 15 F.3d 225, 228 (2d Cir.1994); *United States v. Casamento,* 887 F.2d 1141, 1156 (2d Cir.1989), *cert. denied,* 493 U.S. 1081, 110 S.Ct. 1138, 107 L.Ed.2d 1043 (1990). Not only must the evidence be viewed in the light most favorable to the government and all permissible inferences drawn in its favor, *United States v. Nersesian,* 824 F.2d 1294, 1302 (2d Cir.), *cert. denied,* 484 U.S. 957, 108 S.Ct. 355, 98 L.Ed.2d 380 (1987), but if the evidence, thus construed, suffices to convince any rational trier of fact of the defendant's guilt beyond a reasonable doubt, then Martinez's conviction must stand. *United States v. Resto,* 824 F.2d 210, 212 (2d Cir.1987) (citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). The govern-

ment's case need not exclude "every possible hypothesis of innocence," *United States v. Friedman,* 998 F.2d 53, 59 (2d Cir.1993) (quoting *United States v. Soto,* 716 F.2d 989, 993 (2d Cir.1983)), and it is the task of the jury, not the court, to choose among competing inferences. *United States v. Stanley,* 928 F.2d 575, 577 (2d Cir.), *cert. denied,* 502 U.S. 845, 112 S.Ct. 141, 116 L.Ed.2d 108 (1991). Moreover, the jury's verdict may be based entirely on circumstantial evidence. *United States v. Libera,* 989 F.2d 596, 601 (2d Cir.), *cert. denied,* — U.S. —, 114 S.Ct. 467, 126 L.Ed.2d 419 (1993).

■ We emphasize, however, that where a fact to be proved is also an element of the offense—here, intent to distribute, which is usually established only by inference—it is not enough that the inferences in the government's favor are permissible. We must also be satisfied that the inferences are sufficiently supported to permit a rational juror to find that the element, like all elements, is established beyond a reasonable doubt. *See United States v. Soto,* 47 F.3d 546, 549 (2d Cir. 1995); *United States v. D'Amato,* 39 F.3d 1249, 1256 (2d Cir.1994).

■ The Supreme Court has made it clear that the possession of a small quantity of drugs standing alone is insufficient to prove an intent to distribute. *Turner v. United States,* 396 U.S. 398, 422–23, 90 S.Ct. 642, 655, 24 L.Ed.2d 610 (1970) (14.68 grams insufficient); *see also United States v. Boissoneault,* 926 F.2d 230, 234 (2d Cir.1991) (5.31 grams); *United States v. Gaviria,* 740 F.2d 174, 184 (2d Cir.1984). But, since the statute specifies no minimum amount, any amount of drugs, however small, will support a conviction when there is additional evidence of intent to distribute. *See United States v. Ramirez,* 608 F.2d 1261, 1264 (9th Cir.1979) ("[W]here there is other evidence of ... intent to distribute, possession of as small a quantity as 4 or 5 grams is sufficient to establish an intent to distribute...."); *United States v. Peterson,* 768 F.2d 64, 66 n. 1 (2d Cir.) (3.8 grams of heroin; citing *Ramirez* with approval), *cert. denied,* 474 U.S. 923, 106 S.Ct. 257, 88 L.Ed.2d 264 (1985).

■ In this case, viewing the evidence in its totality, *United States v. Mariani,* 725 F.2d 862, 865–66 (2d Cir.1984), and drawing all permissible inferences in the government's favor, *Sureff,* 15 F.3d at 228, we conclude that the evidence was sufficient to support the jury's finding beyond a reasonable doubt that Martinez possessed cocaine with an intent to distribute.

The jury was entitled to credit the admission by Martinez to Detective Gardiner that at the time of his arrest he did not use any drugs over any implication to the contrary that could be drawn from the judgment of conviction, entered five years earlier, that prescribed participation in a program of urinalysis testing and, if necessary, drug treatment. Indeed, the government did not have to prove beyond a reasonable doubt the subsidiary fact that Martinez did not use drugs. *See United States v. Schwab,* 886 F.2d 509, 511 (2d Cir.1989), *cert. denied,* 493 U.S. 1080, 110 S.Ct. 1136, 107 L.Ed.2d 1041 (1990); *United States v. Viafara–Rodriguez,* 729 F.2d 912, 913 (2d Cir.1984) ("[T]he burden does not operate upon each of the many subsidiary facts upon which the prosecution may collectively rely to persuade the jury that a particular element has been established beyond a reasonable doubt.").

In addition, and particularly in light of Martinez's admission that he was not a user, his physical possession of a scale, cut, and a loaded firearm supported the jury's rejection of his personal-use defense. "Possession of equipment to weigh, cut and package drugs is highly probative of a purpose to distribute." *United States v. Pugh,* 566 F.2d 626, 628 (8th Cir.1977), *cert. denied,* 435 U.S. 1010, 98 S.Ct. 1885, 56 L.Ed.2d 393 (1978). There was credible testimony that street sales of between one-half and one gram were common and that the defendant's scale was capable of weighing amounts up to one gram. Similarly, there was credible testimony that "cut" was used to increase seller's profits and reduce toxicity. Moreover, Martinez's possession of the loaded firearm, irrespective of whether he was or was not a user, and especially in the context of this case, by itself provided strong evidence of his intent to distribute. *See, e.g., United States v. White,*

969 F.2d 681, 684 (8th Cir.1992) ("Because a gun is 'generally considered a tool of the trade for drug dealers, [it] is also evidence of intent to distribute.'" (quoting *United States v. Schubel,* 912 F.2d 952, 956 (8th Cir.1990))); *United States v. Garrett,* 903 F.2d 1105, 1113 (7th Cir.) (loaded pistol found directly underneath bag containing a small amount of cocaine was, together with other factors, sufficient to infer intent to distribute, and supported conviction for possession with intent to distribute), *cert. denied,* 498 U.S. 905, 111 S.Ct. 272, 112 L.Ed.2d 227 (1990); *United States v. Rush,* 890 F.2d 45, 49, 52 (7th Cir.1989) (loaded weapon found in car defendant was approaching when arrested was relevant evidence in prosecution for possession of heroin with intent to distribute; weapon was a " 'tool' of the trade," and was an "essential part of the crime of possession with intent to distribute"); *United States v. Dunn,* 846 F.2d 761, 764 (D.C.Cir.1988) (as a "tool[ ] of the narcotic trade," loaded gun found on couch near defendant supported inference of intent to distribute where defendant constructively possessed drugs in house); *United States v. Matra,* 841 F.2d 837, 841 (8th Cir.1988) (intent to distribute may be inferred from, among other things, the presence of firearms). The jury was entitled to reject as implausible the scenario, urged by Martinez, that Garcia—without any henchman or any weapons to protect his valuable supply of drugs, paraphernalia and money—would allow an armed drug addict into the apartment to purchase drugs.

In short, this is not a case like *Boissoneault* where there was no additional evidence beyond the possession of the amount of drugs in question from which intent could be inferred. We stated in *Boissoneault:*

> At the time of his arrest, Boissoneault possessed none of the paraphernalia usually possessed by drug dealers, such as scales, beepers, and other devices, nor did he possess any of the materials needed to process cocaine or to package it in druggist folds. Nor was there any evidence that Boissoneault owned a gun or other weapon, which would have helped sustain an inference that he was engaged in the dangerous business of drug trafficking.

926 F.2d at 234.

In this case the opposite is true. The defendant possessed drug paraphernalia, namely, a scale and cut, as well as a gun from which "an inference that he was engaged in the dangerous business of drug trafficking," *id.,* could properly be drawn.

Because Martinez has not overcome the "heavy burden" of showing that the evidence was insufficient for the jury to find that he possessed cocaine with intent to distribute, we affirm the judgment of the district court.

CALABRESI, Circuit Judge, concurring:

I join Judge Walker's opinion for the Court in its entirety. However, due to the tortured history of this case, I think it appropriate to add a few words separately.

Initially, I voted that the evidence presented at Martinez's trial was insufficient to support his conviction for possessing cocaine with intent to distribute. On appeal, the Government did not take issue with Martinez's claim that he was a narcotics addict (which was the basis of Martinez's argument that the evidence found on him was as consistent with his personal use of narcotics as with an intent to distribute). Nor did the Government in its brief on appeal make mention of Detective Gardiner's testimony that Martinez had indicated, following his arrest, that he was not a "user." The Government simply argued that the evidence found in Martinez's possession—the 3½ grams of cocaine, the small quantity of "cut," the one-gram hand-held scale, and the gun—was sufficient to demonstrate his intent to distribute.[1]

---

**1.** The Government also claimed that Martinez could be found to have constructively possessed the drug trafficking paraphernalia found in the apartment. I continue to believe, for all the reasons detailed in Judge Newman's original opinion, that the evidence at trial did not sufficiently prove Martinez had "dominion and control" over the evidence found in the apartment so as to allow a finding of constructive possession. *See, e.g., United States v. Rios,* 856 F.2d 493, 496 (2d Cir.1988) (explaining that "mere presence" does not establish defendant's possession over goods found on site).

Because the case was presented to us exclusively on these terms—that even if one were to assume that Martinez was a user, the objects in his possession demonstrated his intent to distribute—I originally felt that we had no choice but to find that the evidence at trial was insufficient as a matter of law to prove, beyond a reasonable doubt, that Martinez possessed cocaine with the intent to distribute. I reached this conclusion because it seemed to me that essentially all of the "evidence" found in Martinez's possession was precisely in equipoise on the issue of whether Martinez was a seller or nothing more than a user.

As Judge Walker's opinion for the Court notes, the small quantity of drugs on Martinez's person was by itself insufficient to prove an intent to distribute. It no more indicated that the possessor was a seller than that he had the drugs simply for his own use. Similarly, though one might speculate that the small hand-held scale and the "cut" possessed by Martinez showed an intent to distribute, the defense brought out that having these items was consistent with personal use of narcotics. And the Government presented no evidence at all to show that the possession of a scale this small or of this amount of "cut" was in fact any more. indicative of dealing than of using. In other words, on the assumption that Martinez was a user, the scale and the "cut" were also in equipoise, because there was no evidence presented at trial on the basis of which one could conclude that they made it more likely that Martinez was a seller, rather than just a user. Of course, as noted by both the original opinions from this panel, case law has held that the possession of a gun can provide some grounds for a conclusion that the possessor has an intent to distribute. But a gun, though considered to be indicative of an intent to distribute, also admits of many other explanations. And I was not convinced that, with all the other evidence in equipoise, the gun by itself could come close to supporting a verdict that Martinez was a seller and not simply a user, given that the burden of proof requires evidence sufficient for the jury to find guilt beyond a reasonable doubt.

Of course, our holdings state that we must view the evidence "collectively" and "in its totality" when assessing a sufficiency challenge. *See, e.g., United States v. Mariani,* 725 F.2d 862, 865–66 (2d Cir.1984). Clearly the combination of many small pieces of valid evidence—each of which could be established "more probably than not"—might, in its sum, amount to proof of an essential element of a crime beyond a reasonable doubt. However, the aggregation of many small pieces of data—which are not evidence at all because every one is in equipoise—can never establish proof beyond a reasonable doubt. The adding of zeros to zeros, no matter how many, cannot amount to more than zero.

This does not mean that a jury would necessarily be precluded from finding that a small scale or a small amount of "cut," in the hands of a user, constituted proof of selling. Had the Government, for example, put forth evidence that such a scale or such an amount of "cut" was more likely possessed by dealers than by simple users, then these items would have been valid proof of an intent to distribute and their sum could have supported the conclusion that their possessor was a seller. But in this case the Government presented no such evidence, and thus made no showing that these items leaned more toward dealing than toward using. In the absence of such evidence, neither juries nor judges can be permitted to speculate on whether the items are more consistent with selling or dealing than with personal use.

Of course, when facts are well-known, notice can be taken by juries (and judges), and the Government, like any other party, need not demonstrate that which is obvious. The Government does not have to present expert testimony showing that the possession of 100 kilograms of cocaine is more consistent with selling than using. *See, e.g., United States v. Brown,* 921 F.2d 785, 792 (8th Cir.1990) (noting that a jury can reasonably infer an intent to distribute "solely from possession of a large quantity of drugs"). But on close and contested factual issues, the Government must always prove its points through evidence presented at trial.

The reason for requiring such a valid evidentiary basis for crucial conclusions is quite

simple and is especially apt in cases such as this where the Government faces no particular difficulties in presenting the evidence.[2] If the Government does not bring in needed evidence because such evidence does not exist, then any conviction would likely be incorrect. If, instead, the Government presents such evidence, putting the Government to its proof subjects that proof to appropriate cross-examination and possible impeachment.

In sum, then, all the items found in Martinez's possession—except for the gun, which appeared to me at that point to have only very limited evidentiary value in showing an intent to distribute—seemed to be equally likely to support the conclusion that Martinez was no more than a user as that he was a seller. As a result, and on the assumption that Martinez was a drug user, I could not hold, as the Government urged on appeal, that there was sufficient evidence to allow the jury to find beyond a reasonable doubt that Martinez had an intent to distribute the 3½ grams of cocaine found in his possession. I, therefore, initially concurred in Judge Newman's opinion to reverse Martinez's conviction.

Judge Walker, in setting forth his vote to affirm, first pointed out that there was evidence presented at Martinez's trial which could support the proposition that Martinez was not a user: allegedly, Martinez, when asked by Detective Gardiner upon his arrest whether he had used any drugs, had indicated that he did not. Though the Government had not mentioned this part of Martinez's trial to us on appeal, it was anything but an insignificant detail. For only on the assumption that Martinez was a user was the "evidence" in equipoise between selling and using. If it was shown instead that Martinez was not a user, then the overwhelming explanation for the items in his possession had to be that he was a seller. With the exception of the gun, the evidentiary significance of all the items Martinez possessed turned exclu-

sively on the "conditional fact" of whether Martinez was a user. And though the Government's presentation to us did not take issue with Martinez's claim that he was a user, Judge Walker properly noted that this "conditional fact" was actually in dispute based on the evidence presented at trial.

This development, however, did not immediately alter my vote to reverse. In reaffirming his vote to overturn Martinez's conviction, Judge Newman stressed that the Government's closing arguments to the jury did not mention Detective Gardiner's testimony suggesting that Martinez was not a user. It thus appeared that the Government had presented this case to the jury as it had presented it to us on appeal: even if Martinez was thought to be a user, the evidence still proved beyond a reasonable doubt that he was a seller. Since this was the way in which the Government had placed the issues not only to us but also to the jury, I deemed it appropriate to judge the case on these terms—terms which, as I indicated above, rendered the Government's evidence insufficient for me.

During the consideration of a possible rehearing—in the course of which I benefited from the input of my colleagues and conducted further research—it became clear to me, however, that my vote to reverse was untenable.

First, my additional research led me to conclude that I could not judge this case solely as it was presented and stressed by the Government, and that I was bound, instead, to consider it on the basis of the whole evidentiary record. By judging the case solely on the terms that the Government stressed to the jury on summation and to us on appeal, I was in effect holding that the Government had waived the right to have the sufficiency of the evidence judged on the full trial record below. There may be instances in which a party (including the Government) by its litigation strategy precludes us from

---

**2.** There may be circumstances in which a court might be more willing to take judicial notice of certain facts because there are special impediments, unrelated to the validity or value of the evidence, that make it difficult to present proof on a particular issue. *Cf.* 4 Fowler V. Harper, Fleming James, Jr., Oscar S. Gray, *The Law of*

*Torts* § 19.9, at 60–63 (2d ed. 1986) (explaining that the tort doctrine of *res ipsa loquitur*, which frequently involves taking judicial notice of facts in order to permit a jury to find that a plaintiff's injury was caused by negligence, is in part justified by the "defendant's superior access to the facts"). But this is not such a case.

considering certain issues. But this is not such a case, for there appears to have been no strategic basis for the Government's position. ·It simply made the mistake of emphasizing to the jury and to us only evidence that was—for me—ultimately not sufficient to sustain a guilty verdict. *Cf. United States v. Kon Yu–Leung,* 51 F.3d 1116 (2d Cir. Apr. 7, 1995) (stressing the distinction between inadvertent and strategic grounds for a failure to object to the admission of evidence).

The Supreme Court has indicated that in conducting sufficiency review, a court is to examine *"all of the evidence," Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original), and in my research I did not find a single case in which an appellate court in judging the sufficiency of the evidence to support a conviction looked only to the evidence highlighted through the Government's advocacy, rather than at all of the evidence presented in the trial. *Cf. United States v. Moon,* 718 F.2d 1210, 1236 (2d Cir.1983) (assessing a sufficiency claim by "reviewing the actual trial transcript," after the Government failed to highlight sufficient evidence in the trial record). Consequently, it became clear to me that, despite the Government's approach to this case which appeared to concede to us and to the jury that Martinez was a user, the dispute over Martinez's status could not be disregarded and I needed to consider the significance of the evidence suggesting that Martinez might in fact not be a user. · *See Jackson,* 443 U.S. at 318; 99 S.Ct. at 2788–89 (explaining that "the critical inquiry on [sufficiency] review ... [is] whether *the record evidence* could reasonably support a finding of guilt beyond a reasonable doubt" (emphasis added)).

Assessing the significance of Gardiner's testimony about Martinez's statement inevitably meant facing the question of whether the "conditional fact" of Martinez's status would need to be demonstrated beyond a reasonable doubt. Of course, as noted in Judge Walker's opinion for the Court, those facts that are truly "subsidiary" to essential elements of a crime need not be proved beyond a reasonable doubt. *See, e.g., United States v. Schwab,* 886 F.2d 509, 511 (2d Cir.

1989), *cert. denied,* 493 U.S. 1080, 110 S.Ct. 1136, 107 L.Ed.2d 1041 (1990). But in this instance, whether or not Martinez was a user did not appear to me to be simply one of a number of lesser subsidiary facts in support of an essential element. Rather, since it seemed to be the one "conditional fact" upon which all the other "data"—except for the gun—fully depended if they were to have any evidentiary significance at all, Martinez's status looked like *the* singular and central fact upon which all the evidence, ˙and thus the entire case, turned.

In unusual situations in which all the data presented at trial depends on one key fact in order to have any evidentiary significance at all, such a vital "conditional fact" becomes an essential element of the Government's case, and would seem to require proof beyond a reasonable doubt like any other essential element of the case. The Supreme Court has suggested as much in *Smith v. United States,* 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192 (1954), when it held that a fact which served as the "cornerstone" of the Government's case was to be subject to a heightened evidentiary standard. The Court explained that it was ultimately of no importance "whether we consider [that fact] ... one of the formal 'elements' of the crime or ... a fact subsidiary to the proof of these 'elements.' It is the practical relation of the [fact] to the Government's case which is crucial, not its theoretical relation to the definition of the offense." *Id.* at 155, 75 S.Ct. at 199. Consequently, if it ·was truly the case that the value of all the evidence against Martinez depended on the single, vital "conditional fact" of whether Martinez was a user, it seemed to me that such a fact would itself need to be proved beyond a reasonable doubt if a jury were to be allowed to convict Martinez. *See generally In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (explaining that the Due Process Clause requires that all essential elements have to be proved beyond a reasonable doubt).

Significantly, if that were the appropriate standard, the evidence in this case would not have sufficed. The Supreme Court has held that even an "exculpatory statement[ ] ... [g]iven when the accused is under suspicion

... call[s] for corroboration to the same extent as other statements," and that such a statement cannot, standing alone, support a criminal conviction. *Opper v. United States,* 348 U.S. 84, 89–92, 75 S.Ct. 158, 162–64, 99 L.Ed. 101 (1954). Therefore, Martinez's statement to Gardiner that he was not a user would not have been enough to establish that crucial fact beyond a reasonable doubt.

The discussion in connection with a possible rehearing, however, highlighted a further and highly important point in support of the conviction that the Government had also not pressed on appeal, namely that the particular circumstances of Martinez's gun possession made the gun not just some limited evidence of an intent to distribute, but instead extremely powerful proof of such an intent.[3] Martinez was found in the possession of a gun not on the street or in his own home (let alone while hunting), but in an apartment that, by virtue of the drug distribution paraphernalia found in it, clearly served as a locus for retail drug sales. Moreover, of the two persons found in the apartment, he was the only one person with a weapon.

When I thought about these details, I concluded that I could no longer subscribe to Judge Newman's suggestion that in this case "[w]e have no reason to doubt that a drug purchaser is as likely to be armed as a drug seller." These circumstances, which though not stressed on appeal were plainly before the jury, established a very strong nexus between the gun and drug trafficking activity. While I still believe that a jury cannot conclusively infer an intent to distribute drugs based on the bare possession of a firearm, evidence that a defendant was the only possessor of a gun inside a narcotic distribution center is undeniably powerful proof of involvement in narcotics distribution. Consequently, Martinez's possession of a firearm *under the particular circumstances of this case* provided more than just a little support for the conclusion that Martinez was a seller and not simply a user. *Cf. United States v. Dunn,* 846 F.2d 761, 764 (D.C.Cir. 1988) (noting expert testimony that "retail

drug operations run from houses often contain armed guards to protect the drugs" and finding that defendant's possession of a loaded revolver in a house apparently serving as a drug distribution center helped to support the jury's finding that he had an intent to distribute).

Did Martinez's possession of the gun under the special circumstances of this case suffice to sustain the jury's finding that Martinez had an intent to distribute, given that the burden of proof is "beyond a reasonable doubt"? There was, in fact, no need to decide this question because the significance of the context in which Martinez had the gun went well beyond just enhancing the weight of that piece of evidence itself. The gun's increased importance meant that there could be no doubt that whether Martinez was or was not a user was not *the* single and central "conditional fact" upon which the proof in this case depended. And since the entire body of proof in this case did not stand or fall on the question of whether Martinez was a user, Martinez's status plainly was not an essential element that needed to be established beyond a reasonable doubt. Rather, Martinez's status was actually just one of a number of subsidiary facts that, as we have repeatedly held, needed only to be proved "more probably than not." As long as there was enough evidence to allow a jury to find "more probably than not" that Martinez was a non-user, Martinez's possession of cocaine, cut and a scale could serve as a significant additional indication of Martinez's intent to distribute. And, when this was added to the evidence afforded by the gun in the context of this case, the aggregate could support the jury's ultimate finding "beyond a reasonable doubt."

I believe that the evidence of Martinez's statement can readily support a jury's finding that he was not a user if the standard is that of "more probably than not." For Martinez's purported admission of this fact was never explicitly recanted and was not contradicted at trial by anything but very limited circumstantial evidence long pre-dating the

---

**3.** On appeal, the Government had only mentioned the circumstances surrounding Martinez's possession of the gun in support of its argument that Martinez constructively possessed the items in the apartment.

admission. Since the evidence of his admission would allow a jury to conclude (more probably than not) that Martinez was in fact not a user, it is also enough to allow a jury to find (more probably than not) that the cocaine, scale and cut in Martinez's possession constitute evidence of drug dealing. Together with the gun in the circumstances of this case as detailed by Judge Walker, that evidence suffices to permit a jury to conclude, beyond a reasonable doubt, that Martinez had the requisite intent to sell. Drawing all allowable inferences in favor of the Government, as we are required to do on an appeal of this sort, *see, e.g., United States v. Gordon,* 987 F.2d 902, 906 (2d Cir.1993), we must hold that the jury properly reached this conclusion. And that means, in my judgment, that, despite its errors, the Government has sufficiently proved its case and the conviction must stand. Accordingly, I join both the Court's result and its opinion.

JON O. NEWMAN, Chief Judge, dissenting:

At the time this appeal was originally decided, I thought it was a "close question" whether the evidence "could reasonably support a finding of guilt beyond a reasonable doubt." *See Jackson v. Virginia,* 443 U.S. 307, 318, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979) (footnote omitted). The opinion initially issued as the majority opinion and now vacated explicitly acknowledged as much. *See United States v. Martinez,* 44 F.3d 148, 149–50 (2d Cir.1995). I thought then and continue to think that the evidence was not sufficient to meet the constitutional standard of proof beyond a reasonable doubt. My reasons are fully set forth in the original majority opinion, *id.* at 149–56, and need not be repeated.

Though there is a difference of opinion within the panel as to whether the evidence is sufficient, we are in agreement on one important aspect of the analysis appropriate to cases such as this. We are obliged to view the evidence with all reasonable inferences drawn in the Government's favor, but we may not permit that rule to displace the even more important rule that all elements of an offense must be proven beyond a reasonable doubt. The inference-drawing rule relates to facts sought to be established by the Government in order to provide a basis for jury findings that each element of each offense charged is proven beyond a reasonable doubt.

In this case, one of the facts the Government seeks to prove—that Martinez had the intent to distribute narcotics—is an element of one of the offenses charged in the indictment. If we simply said that viewing the evidence of intent to distribute in the light most favorable to the Government meant that the Government was entitled to an inference that Martinez had the intent to distribute, we would have undermined the constitutionally required standard that each element be proven beyond a reasonable doubt.

Fortunately, Judge Walker's opinion for the majority is careful to recognize that the "favorable light" in which we view evidence from which inferences may be reasonably drawn does not displace our obligation as a reviewing court to be satisfied that the evidence permits a jury reasonably to find each element established beyond a reasonable doubt, even though the element of intent is necessarily a matter of inference. *United States v. D'Amato,* 39 F.3d 1249, 1256 (2d Cir.1994), which Judge Walker cites, is an instructive example of the distinction to be observed. We there first considered the subsidiary facts that the jury was entitled to find, with reasonable inferences drawn in the Government's favor, and we then undertook the distinct task of determining whether those facts permitted a jury reasonably to find all the elements of the offenses charged beyond a reasonable doubt. The same approach is evident in *United States v. Soto,* 47 F.3d 546, 549 (2d Cir.1995).

Though we are in agreement on the analysis, we differ on the outcome—not a surprising conclusion in a "close case."

I respectfully dissent.