101 F.3d 681
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
UNITED STATES of America, Appellee,
v.
Wendy HARDISON, Defendant,
Wayne HARDISON, Defendant-Appellant.
 No. 95-1511.
 United States Court of Appeals, Second Circuit.
 April 1, 1996.
 
 APPEARING FOR APPELLANT: JULIE CLARK, BROOKLYN, NEW YORK
 APPEARING FOR APPELLEE: RICHARD SULLIVAN, ASSISTANT UNITED STATES ATTORNEY, SOUTHERN DISTRICT OF NEW YORK, NEW YORK, NEW YORK
 Before CARDAMONE, WALKER and McLAUGHLIN, Circuit Judges.
 
 
 1
 This cause came on to be heard on the transcript of record from the United States District Court for the Southern District of New York (Metzner, Judge ), and was submitted.
 
 
 2
 ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of said district court be and it hereby is AFFIRMED.
 
 
 3
 Defendant-appellant Wayne Hardison ("Hardison") appeals a judgment of the district court (Metzner, J.) convicting him, after a four-day jury trial, of one count of conspiring to transport stolen property in interstate commerce in violation of 18 U.S.C. § 371 and one count of transportation of stolen property in interstate commerce in violation of 18 U.S.C. § 2314. Hardison was sentenced by the district court (Sotomayor, J.) to a term of five months' imprisonment on each count, to run concurrently, and a three-year term of supervised release. Hardison is on bail pending this appeal.
 
 
 4
 In 1992, Hardison and his sister Wendy agreed to transport and Hardison then transported approximately $34,000 in stolen jewelry from New York City to Dayton, Ohio. Wendy Hardison was an employee of Claire Creations, a Manhattan jewelry manufacturer. At this time, Hardison began selling jewelry at deeply discounted prices in and around Dayton, Ohio. Initially, his sales were limited to several of his co-workers at the United States Post Office in Dayton. In each case, Hardison told his customers that he received shipments of jewelry from his sister Wendy, who obtained it from the New York jewelry manufacturer for which she worked. Apparently, the customers received neither receipts nor warranties for the jewelry. In one case, Hardison accepted furniture in lieu of cash; in another case, he accepted cash installments paid directly to his checking account at the postal employees credit union. In short, Hardison's conduct was strikingly inconsistent with normal business practices.
 
 
 5
 Eventually, Hardison began selling his wares to John Stafford, the owner and manager of a retail jewelry store located in Dayton. In Hardison's first transaction with Stafford, Hardison sold him a diamond tennis bracelet, which Stafford appraised at a wholesale value of $2,800, for $700 cash. Hardison told Stafford that the bracelet had belonged to a former girlfriend. Hardison returned to Stafford's store five or six times during the summer and early Fall of 1992 to sell Stafford high quality jewelry, usually rings, which Stafford determined to be new and worth three or four times Hardison's asking price. Hardison also sold Stafford loose diamonds, which Hardison said he could provide on a regular basis. During this period, Hardison advised Stafford that he was getting his jewelry from a female source in New York City. Stafford told Hardison that he was interested in purchasing up to $50,000 or $100,000 worth of jewelry per month.
 
 
 6
 In mid October 1992, Hardison presented Stafford with forty-six pieces of new jewelry, which Stafford estimated to be worth more than $20,000 wholesale. Stafford inspected the jewelry and, suspecting that the jewelry was stolen, contacted the Federal Bureau of Investigation ("FBI"). With Stafford's permission, the FBI monitored and recorded several conversations between Stafford and Hardison. In one conversation, when Stafford asked how he could afford to sell the jewelry for less than scrap value, Hardison advised him to "break [the jewelry] down" if that made him "feel better." Hardison told Stafford that his source did not work at a jewelry store or manufacturer but that the jewelry was not stolen. He also remarked, if "the merchandise is stolen, then I don't know nothing about it."
 
 
 7
 Defendant challenges his conviction on the ground that the evidence was legally insufficient to prove that he knew the objects he had transported were stolen. In order to prove the defendant guilty of interstate transportation of stolen property, the government must establish beyond a reasonable doubt, inter alia, that at the time of the transportation, the defendant knew the property was stolen, converted, or taken by fraud. See Dowling v. United States, 473 U.S. 207, 214 (1985). A conviction must stand if, after the "evidence [is] viewed in the light most favorable to the government and all permissible inferences [are] drawn in its favor," the evidence could "convince any rational trier of fact of the defendant's guilt beyond a reasonable doubt." United States v. Martinez, 54 F.3d 1040, 1042 (2d Cir.), cert. denied, 116 S.Ct. 545 (1995).
 
 
 8
 Hardison is unable to meet this "very heavy burden." United States v. Amato, 15 F.3d 230, 235 (2d Cir.1994) (quoting United States v. Rivera, 971 F.2d 876, 890 (2d Cir.1992)). The evidence at trial, including the testimony of several witnesses to whom Hardison had sold the stolen jewelry, post-arrest statements made by Hardison to arresting officers, and tape recordings of two consensually-recorded conversations between Hardison and Stafford easily supported an inference that Hardison knew the jewelry in question was stolen. In light of the evidence as a whole, the jury's conclusion was justified.
 
 
 9
 For the reasons set forth above, the judgment of the district court is hereby AFFIRMED.