**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Yuami YOSHIDA, aka Yuami Isogai,
Defendant–Appellant.**

**No. 01–50311.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 5, 2002.

Filed Sept. 12, 2002.

Robert Ramsey, Jr., Ramsey & Price, Los Angeles, CA, for the defendant-appellant.

William C. Bottger, Jr., United States Attorney's Office, Los Angeles, CA, for the plaintiff-appellee.

Before REINHARDT, TROTT, Circuit Judges, and WHALEY,* District Judge.

## OPINION

TROTT, Circuit Judge.

### OVERVIEW

Yuami Yoshida ("Yoshida") timely appeals her jury conviction for her role in assisting three Chinese aliens into the United States in violation of 8 U.S.C. §§ 1324(a)(1)(A)(iv) and (a)(2)(B)(ii). Yo-

---

* The Honorable Robert H. Whaley, United States District Judge for the Eastern District of Washington, sitting by designation.

shida argues that there was insufficient evidence for the jury to find that: (1) she knew or recklessly disregarded the fact that the aliens were illegally entering the United States; (2) she encouraged or induced their entry into the United States; (3) she brought or attempted to bring the aliens to the United States; and (4) she did so for private financial gain or commercial advantage. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## BACKGROUND

In August 2001, in the Fujian province of the People's Republic of China ("PRC"), the families of Zhuan Dan Lin ("Zhuan"), Cheng Huang ("Cheng"), and Yue Rong Lin ("Yue") made separate arrangements with someone identified as the "Snakehead" to smuggle Zhuan, Cheng, and Yue from the PRC into the United States. Each family paid approximately $50,000 for this service to the Snakehead operation.

The aliens' journey from the PRC to the United States was comprised of three stages: (1) from the "source" country (PRC), to the "staging" country (Thailand); (2) from the "staging" country to the "transit" country (Japan); and finally, (3) from the "transit" country to the "target" country (United States).

Before embarking on the final leg of the journey, a male escort provided Zhuan, Cheng, and Yue with passports, airline tickets, and boarding passes in Japan's Narita Airport. The airline tickets for the three aliens bore the names Daisuke Masaki, Tadashi Murai, and Keiko Ishii. The male escort pointed to Yoshida, who was walking slowly at the bottom of a flight of stairs, and told the three aliens that Yoshi-

da was their escort and that they must follow her. Once the aliens fell into line behind her, Yoshida quickened her pace and walked toward a train platform within the airport. Without communicating or making eye contact with the aliens, Yoshida entered the train and Zhuan, Cheng, and Yue followed. They continued to follow her off the train and to the Delta Airlines boarding gate. They arrived at the gate in time for the final boarding of Delta Airlines flight 78, the flight for which they had received tickets and boarding passes just moments earlier from their male escort.

Yoshida and the aliens were the last passengers to board Delta flight 78 to Los Angeles. During the flight, Yoshida sat in a row immediately behind the aliens. There is no evidence that Yoshida spoke to the aliens during the flight. Following the male escort's instructions, the aliens destroyed their passports, tickets, and boarding passes sometime during the flight to Los Angeles. The passport Zhuan partially destroyed was recovered from the airplane toilet.

Upon arrival in Los Angeles, Yoshida was patted down by an INS Supervisory Inspector. The INS inspector noticed a bulge in Yoshida's underwear. After the INS inspector demanded that Yoshida explain the bulge, Yoshida handed two baggage claim checks to the inspector. Delta Airlines records established that the two claim checks were issued at check-in in Japan in the names of Daisuke Masaki and Tadashi Murai, Zhuan's and Cheng's aliases. Yoshida did not check any luggage for herself. Zhuan and Cheng only had carry-on luggage with them and neither was provided with baggage claim checks prior to their departure from Japan. No bags with those claim numbers were ever recovered.

In addition to Yoshida's actions at Narita airport and LAX, there were other suspicious facts surrounding Yoshida's journey to the United States. Yoshida stated on her I–94 form that her destination was the Miyako Hotel, in Las Vegas, Nevada, yet no business license was issued for a hotel by this name. Moreover, Yoshida's passport indicated that she traveled frequently within Southeast Asia during October and November 2000.

Yoshida was indicted (1) for knowingly encouraging and inducing Zhuan, Yue, and Cheng to enter the United States, in violation of 8 U.S.C. § 1324(a)(1)(A)(iv), and (2) for bringing those same aliens to the United States for commercial advantage and private financial gain, knowing and in reckless disregard of the fact that they had not received prior official authorization to enter or reside in the United States, in violation of 8 U.S.C. § 1324(a)(2)(B)(ii). A six day jury trial began on February 6, 2001. Zhuan, Cheng, and Yue testified about their trip from the PRC to the United States and the many escorts they had along the way. At the end of the trial, Yoshida moved for acquittal based on insufficient evidence, but the district court denied the motion. The jury convicted Yoshida on both counts of the indictment. Yoshida was sentenced to ten months imprisonment for violating 8 U.S.C. § 1324(a)(1)(A)(iv) ("Count One"), and thirty-six months imprisonment for violating 8 U.S.C. § 1324(a)(2)(B)(ii) ("Count Two"), to run concurrently and to three years of supervised release.

## DISCUSSION

### A. STANDARD OF REVIEW

■ We review de novo a district court's denial of a motion for acquittal based on insufficiency of the evidence. *United States v. Hernandez*, 105 F.3d 1330, 1332 (9th Cir.1997). We "respect the exclusive province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts, by assuming that the jury resolved all such matters in a manner which supports the verdict." *United States v. Goode*, 814 F.2d 1353, 1355 (9th Cir.1987) (citations omitted). We draw all reasonable inferences favorable to the government. *United States v. Arriaga–Segura*, 743 F.2d 1434, 1435 (9th Cir.1984). Thus, we will not disturb the jury's finding of guilt if "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

### B. Count I, 8 U.S.C. § 1324(a)(1)(A)(iv)

■ Section 1324(a)(1)(A)(iv) makes it a crime to (1) encourage or induce, (2) an alien to come to the United States, (3) while knowing or in reckless disregard of the fact that such coming to, entry or residence is or will be in violation of law. 8 U.S.C. § 1324(a)(1)(A)(iv). We have held that " 'to convict a person of violating section 1324(a)(1)(A), the government must show that the defendant acted with criminal intent', i.e., the intent to violate United States immigration laws." *United States v. Barajas–Montiel*, 185 F.3d 947, 951 (9th Cir.1999) (quoting *United States v. Nguyen*, 73 F.3d 887, 893 (9th Cir.1995)).

Yoshida admits that Zhuan, Cheng, and Yue are aliens, but she claims that there is insufficient evidence that she (1) knew or recklessly disregarded the fact that the

aliens were not lawfully in the United States, and (2) knowingly encouraged or induced in some way their presence in the United States. Yoshida contends that in order for the jury to convict her for encouraging or inducing an alien to illegally enter the United States, the government had to prove that she gave support or help to the aliens. Yoshida argues that her mere presence at the airport and her simultaneous boarding of the plane were insufficient to establish that she committed the crimes.

Yoshida's "mere presence" at the airport and on the flight is not the only evidence offered against her. A number of events revealed at trial creates a series of inescapable inferences leading to the rational conclusion that Yoshida knowingly "encouraged and induced" Zhuan, Cheng, and Yue to enter the United States and that she did so with knowledge or in reckless disregard of the fact that their entry was in violation of law. For example, the government offered evidence that prior to boarding the flight that would take them to the United States none of the three aliens knew for which flight their tickets were valid, from which gate the plane departed, what time the plane was to depart, or how to find the departure gate. Yoshida clearly filled in these essential blanks. Thus, it was reasonable for the jury to infer that Yoshida helped the aliens enter the United States by leading them through the airport, to the correct departure gate, to the correct airplane, at the appointed time.

Furthermore, the government presented direct evidence that Yoshida concealed baggage claim checks in her underwear bearing the fake names of two of the aliens. A reasonable explanation for Yoshida's possession of the two baggage claim checks is that she obtained them by interacting with whoever in the smuggling organization obtained the boarding passes that were given to the three aliens. The fact that she hid the claim checks in her underwear is also evidence of guilty knowledge of her illegal acts.

We reject Yoshida's argument that her possession of the baggage claim checks was insufficient for a jury to conclude that she had assisted the aliens or had any link to them. While there might be some situations involving an unlucky airline passenger who innocently walks through an airport ahead of aliens, simultaneously shows up at a gate with a group of aliens, boards an aircraft at the same time as aliens, and is seated directly behind the aliens for the duration of the flight, this situation is clearly distinguishable. The fact that Yoshida concealed the baggage claims bearing the fake names of the aliens in the bulge in her underwear is strong evidence that she was not some unlucky bystander, but rather an escort for Zhuan, Cheng, and Yue.

The government also offered circumstantial evidence that Yoshida knowingly encouraged Zhuan, Cheng, and Yue to enter the United States. Yoshida led them to the flight for which the smuggling organization had provided tickets and boarding passes only an instant before Yoshida was identified as their escort. Yoshida walked quickly after the aliens caught up with her, and she timed their arrival at the boarding gate so that they could enter the aircraft without having to wait or be questioned extensively by airline employees. Though Yoshida did not speak or make eye contact with the aliens, the aliens followed her through the airport, boarded the same plane at the same time, and sat in the row ahead of her. Further, Yoshida's I–94

form indicated that her final destination was the Miyako Hotel in Las Vegas, but no business license was found for this hotel. The jury could reasonably conclude that no such hotel existed and thus, Yoshida's stated purpose for her trip was false.

From all of this evidence, a reasonable jury could easily conclude that Yoshida knowingly led the aliens to the flight and timed their arrival at the gate to assure that she and the aliens could promptly enter the aircraft without extensive questioning. It was also reasonable to conclude that Yoshida intentionally avoided overt communication with the aliens to preserve the appearance that she was not their escort. Finally, a jury could reasonably conclude that Yoshida's real purpose for the trip was to participate in the smuggling operation, rather than to stay at a non-existent hotel. Although the government's case consisted of largely circumstantial evidence and required the jury to make reasonable inferences, circumstantial evidence can form a sufficient basis for conviction.

*See United States v. Bernard*, 48 F.3d 427, 430 (9th Cir.1995), *United States v. Loya*, 807 F.2d 1483, 1486 (9th Cir.1987). Here, the jury had ample evidence before it to conclude, beyond a reasonable doubt, that Yoshida encouraged the aliens to enter the United States, with knowledge or in reckless disregard of the fact that the aliens' entry was in violation of law.

## C. Count II, 8 U.S.C. § 1324(a)(2)(B)(ii)

Yoshida contends that there was insufficient evidence to find (1) that she brought an alien to the United States; (2) that she did so for commercial advantage or private financial gain; and (3) that she knew or recklessly disregarded the fact that the alien did not have official authorization to enter the United States. Yoshida argues that even if there was sufficient evidence to prove Count One's "encouraging and inducing" element, Count Two's "bringing" element requires more than encouragement. She argues that bringing requires more direct activity such as physical transportation or some type of control over the method of transportation, such as driving aliens across the United States border. We do not define "bringing" so narrowly.

The statute does not define "brings to." Thus, "[i]n the absence of such a definition, we construe a statutory term in accordance with its ordinary or natural meaning." *F.D.I.C. v. Meyer*, 510 U.S. 471, 476, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994).

This skirmish over the definition of the word "bring" recalls to our memory a recent dispute over the equally common word "carry." *See Muscarello v. United States*, 524 U.S. 125, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998), *United States v. Foster*, 165 F.3d 689 (9th Cir.1999) (en banc). From this authority, we conclude that "bring" must be interpreted just as the Supreme Court interpreted "carry": broadly, using its ordinary meaning. *Muscarello*, 524 U.S. at 139, 118 S.Ct. 1911.

[6] "Bring" is defined as "to convey, lead, carry or cause to come along from one place to another, ... to escort, [or] accompany." Webster's Third New International Dictionary 278 (1976). "Bringing" an alien to the United States would include "leading," "escorting," or "causing [the alien] to come along" to the United States. Although Yoshida argues

that "bring" requires some physical transport, the ordinary definition of "bring" is not so limited, and Yoshida offers no indication that Congress intended to limit "bring." The statute itself conclusively indicates that Congress intended a broad definition of bring: "brings to or attempts to bring to the United States *in any manner whatsoever.*" 8 U.S.C. § 1324(a)(2) (emphasis added).

Here, Yoshida guided Zhuan, Cheng, and Yue to an aircraft heading to the United States. In *United States v. Gonzalez–Torres,* 273 F.3d 1181, 1186–87 (9th Cir.2001), we held that an individual leading others and guiding them across the border using hand signals and gestures was guilty of bringing aliens to the United States in violation of 8 U.S.C. § 1324(a)(2). Gonzalez–Torres did not physically transport his group of aliens, he merely brought them to the United States by guiding them along the correct route. Similarly, Yoshida walked slowly until the aliens caught up to her in the airport and then quickly led them to the appropriate flight. She then accompanied them on the flight to the United States. In addition to the aliens' testimony that Yoshida was pointed out as their escort and that she changed pace once they fell into behind her, she had the two baggage claims under the aliens' aliases hidden in her underwear. As in Count One, these facts are sufficient evidence to conclude reasonably that Yoshida was connected to the three aliens and that she brought them to the United States by leading them to the gate and assisting them in boarding the aircraft. The fact that Yoshida did not actually pilot the airplane to the United States is of little consequence. She escorted the aliens onto the airplane that eventually landed in the United States.

 Yoshida additionally argues that there was no evidence showing that she

would receive any private financial gain or commercial advantage. The statute, however, does not require evidence of an actual payment or an agreement to pay. *See United States v. Angwin,* 271 F.3d 786, 805 (9th Cir.2001). "It merely requires that the offense was done for the purpose of financial gain." *Id.* Here, the government presented evidence that the families of Zhuan, Cheng, and Yue paid approximately $50,000 each to the smuggling operation. Given Yoshida's frequent pattern of travel in Southeast Asia and identification as the escort for the final leg of the aliens' journey, a reasonable jury could conclude that Yoshida was a member of the smuggling operation, and, therefore expected to reap some of its financial rewards. In addition, Yoshida, as a stranger to the aliens, had no benevolent reason to lead them into the United States. It was reasonable for the jury to infer that Yoshida expected some payment for her role in leading the aliens through the Narita airport to the correct flight to the United States.

 Yoshida argues also that we must presume that she did not have knowledge or a reckless disregard for the fact that the aliens lacked official authorization to come to the United States because Delta airline employees allowed the aliens to board the airplane. We reject this argument. Delta Airlines employees do not have the authority to admit aliens into the United States, and the fact that Delta allowed the aliens onto the flight does not negate the evidence that Yoshida knew or recklessly disregarded the fact that the aliens did not have authorization to enter the United States. Yoshida had baggage claim checks issued under two of the aliens' aliases. As we have previously explained, a reasonable jury could conclude

that she got the baggage claims from the aliens' previous male escort and knew that the aliens were traveling under aliases and entering the United States illegally. Secreting the baggage claim checks in her underwear is also evidence of knowledge of the illegality of her acts. As in Count One, there was sufficient evidence for the jury to conclude that Yoshida knew or recklessly disregarded the fact that Zhuan, Cheng, and Yue were not authorized to enter the United States.

## CONCLUSION

After reviewing the evidence in the light most favorable to the government, we conclude that there was sufficient evidence to support the jury's verdict convicting Yoshida of violating 8 U.S.C. §§ 1324(a)(1)(A)(iv) and 1324(a)(2)(B)(ii).

AFFIRMED.