UNITED STATES of America, Appellee,

v.

Dae Whan KIM, Defendant–Appellant.

No. 05–1605–CR.

United States Court of Appeals, Second Circuit.

Argued: Nov. 10, 2005.

Decided: Jan. 18, 2006.

James Edward Gross, Albany, NY, for Appellant.

Carl J. Boykin, Assistant United States Attorney (Glenn T. Suddaby, United States Attorney for the Northern District of New York, on the brief; Edward P. Grogan, Assistant United States Attorney, of counsel), Syracuse, NY, for Appellee.

Before: CALABRESI, B.D. PARKER, WESLEY, Circuit Judges.

PER CURIAM.

### Background

A jury found defendant Dae Whan Kim guilty of bringing seven illegal aliens into the United States for financial gain in violation of 8 U.S.C. § 1324(a)(2)(B)(ii) and 18 U.S.C. § 2; of failing to bring aliens to an

immigration officer at a point of entry upon arrival in violation of 8 U.S.C. § 1324(a)(2)(B)(iii) and 18 U.S.C. § 2; of transporting aliens within the United States for financial gain in violation of 8 U.S.C. § 1324(a)(1)(A)(ii), § 1324(a)(1)(B)(i), and 18 U.S.C. § 2; and of entering the United States unlawfully in violation of 8 U.S.C. § 1325(a)(1). The district court sentenced Kim to a total of 33 months in prison on the various counts. On appeal, defendant challenges his conviction for violating 8 U.S.C. § 1324(a)(2)(B)(ii), (B)(iii), A(ii) contending that the prosecution failed to show that he smuggled any aliens or that he did so for the purpose of commercial advantage or private financial gain. We affirm.

Chang Ho Son, a native of Korea, was living in Canada when, in response to a Korean newspaper advertisement, he agreed to pay an individual named Kang $10,000 to smuggle him and his family into the United States. Kang, the apparent leader of the smuggling operation, did not work alone. He had recruited Jung Hyun Kim and Tal Chung Kim to help him in the endeavor. Kang introduced Jung Hyun Kim to defendant who then drove Jung Hyun Kim from Vancouver to Montreal where both men met Chang Ho Son and his family and two other groups of Koreans who had also paid Kang to smuggle them into the United States.

On the evening of September 25, 2003, Tal Chung Kim drove defendant and the group of aliens from Montreal to the United States border where they exited the van. Defendant then proceeded to lead the group on foot across a field toward Jung Hyun Kim who was waiting for them in another van on the other side of the border. During this march, which lasted between thirty minutes and one hour, defendant unsuccessfully attempted to talk to Jung Hyun Kim through a two-way radio

that apparently did not work. He also instructed the group to stay quiet and to follow him. After the group had finally found Jung Hyun Kim and entered his van, defendant began walking back toward the border. At this point, the United States Border Patrol, which had been tipped off about the group's activities that night, arrested defendant as well as Jung Hyun Kim and the Koreans in the van.

## Discussion

■ "It is well settled that a defendant seeking to overturn a conviction based upon insufficiency of the evidence bears a heavy burden." *United States v. Martinez*, 54 F.3d 1040, 1042 (2d Cir.1995) (internal citation and quotation marks omitted). "Not only must the evidence be viewed in the light most favorable to the government and all permissible inferences drawn in its favor, but if the evidence, thus construed, suffices to convince any rational trier of fact of the defendant's guilt beyond a reasonable doubt, then [the defendant's] conviction must stand." *Id.* (internal citation omitted). "The government's case need not exclude every possible hypothesis of innocence . . . ." *Id.* at 1042–43 (internal citation and quotation marks omitted). Although "a conviction based on speculation and surmise alone cannot stand," *United States v. D'Amato*, 39 F.3d 1249, 1256 (2d Cir.1994) (citation omitted), "the jury's verdict may be based entirely on circumstantial evidence," *Martinez*, 54 F.3d at 1043 (citation omitted), and may be "inferred" from the evidence, *United States v. Ceballos*, 340 F.3d 115, 129 (2d Cir.2003). So long as the inference is reasonable, "it is the task of the jury, not the court, to choose among competing inferences." *Martinez*, 54 F.3d at 1043 (citing *United States v. Stanley*, 928 F.2d 575, 577 (2d Cir.1991)).

■ Defendant's contention that there was insufficient evidence to support the jury's finding that he smuggled aliens is without merit. Section 1324(a)(2) of Title 8 of the United States Code imposes criminal liability upon any person who brings an alien into the United States either "knowing or in reckless disregard of the fact that an alien has not received prior official authorization." 8 U.S.C. § 1324(a)(2). Defendant argues that based on the evidence adduced, defendant could just as easily have been a smuggler who had been directed by one of the actual smugglers to guide the group of aliens across the border.

Regardless of whether the facts could support that theory, there is little question that a rational trier of fact could find beyond a reasonable doubt that defendant brought aliens into the United States. Kang, the apparent leader of the smuggling operation, introduced defendant to another one of Kang's recruited smugglers, Jung Hyun Kim. Defendant then drove Jung Hyun Kim from Vancouver to Montreal to meet the aliens at the Montreal airport. He guided the aliens over the border, told them to stay quiet and to follow him, and attempted to communicate with the other smugglers on his walkie-talkie. Then, after leaving the aliens at a van on the United States side of the border, defendant turned around and proceeded to walk back toward Canada. In light of these facts, we conclude that the evidence is more than sufficient to support the jury's finding that defendant smuggled aliens into the United States.

■ Defendant also challenges the sufficiency of the evidence with respect to the jury's finding that defendant participated in the smuggling operation for the purpose of commercial advantage or financial gain. The severity of criminal liability under § 1324(a)(2) is heightened if the smuggling offense is done "for the purpose of commercial advantage or private financial gain." 8 U.S.C. § 1324(a)(2)(B)(ii). As one of our sister circuits has pointed out, the statute does not require evidence of an "actual payment or even an agreement to pay" but merely requires that the defendant acted "for the purpose of financial gain." *United States v. Angwin*, 271 F.3d 786, 805 (9th Cir.2001).[1]

■ Defendant claims that the government failed to adduce any evidence that defendant received, was promised or indeed asked for any money or anything else of value for his part in the operation. The government, however, presented evidence that the other individuals involved in the smuggling operation either had received or expected to receive some sort of financial gain. Chang Ho Son testified that he paid Kang $2,000 and owed him another $8,000 for smuggling Chang's family into the United States. Jung Hyun Kim testified that, in return for his participation in the smuggling operation, Kang promised to show him where he could buy lobsters at a reasonable price in Nova Scotia. Tal Chung Kim, who drove defendant and the group of aliens to the border, expected to receive approximately $2,500. In light of the fact that all of the other participants in the smuggling operation were, or at least expected to be, compensated for their labors, a rational jury could certainly infer

---

1. In a related context, we have explained that the meaning of the terms "commercial advantage" and "financial gain," even if not provided for by statute, is "hardly arcane." *United States v. Myung Ho Kim*, 193 F.3d 567, 577 (2d Cir.1999). "The usual meaning of 'commercial,' for example, is 'relating to commerce,' or 'from the point of view of profit: having profit as the primary aim,' while 'advantage' signifies a 'benefit, profit, or gain of any kind.'" *Id.* (quoting WEBSTER'S THIRD NEW INT'L DICTIONARY 456 (1976)).

that a similarly situated defendant working as a smuggler for the same group did so for the purpose of commercial advantage or financial gain.

In a similar case, the Ninth Circuit held that it was reasonable for a jury to find that the defendant smuggled aliens for financial gain in violation of § 1324(a)(2)(B)(ii). *United States v. Yoshida*, 303 F.3d 1145, 1152 (9th Cir.2002). In *Yoshida*, the defendant escorted a group of aliens through a Japanese airport to their United States-bound airplane and then accompanied them on the flight to Los Angeles. *Id.* at 1148. Each alien had paid a certain amount of money to an unknown "snakehead" to be smuggled from the People's Republic of China to the United States. *Id.* at 1152. The court reasoned that, because the defendant was a member of the for-profit smuggling operation, it was reasonable for a rational fact finder to infer that the defendant expected some financial reward for her role as the group's escort. *See id.*

*Yoshida* lends a confirming voice to our reasoning here. As in *Yoshida*, the evidence establishes that the aliens paid the smuggling operation and that defendant was a member of the operation. In fact, the evidence that defendant acted for the purpose of private financial gain is even stronger here because it establishes that each one of the defendant's co-conspirators—and not simply some unidentifiable individual allegedly connected to the defendant—expected to obtain financial gain

for his part in the smuggling operation. Because defendant has not overcome the "heavy burden" of showing that the evidence was insufficient for the jury to find that he brought aliens into the United States for the purpose of financial gain, we affirm the judgment of the district court.[2]

## Conclusion

The district court's judgment of conviction dated March 22, 2005 is hereby AFFIRMED.

---

**2.** Because we conclude that there was sufficient evidence to demonstrate that defendant had the purpose of obtaining financial gain for *himself*, we need not address a potentially forceful, alternative argument, which the government does not raise, that the statute requires only that defendant act for the purpose of *some person's* financial gain. *See United States v. Schemenauer*, 394 F.3d 746, 751 n. 1 (9th Cir.2005). At least one other circuit has held that where a defendant is charged as a principal, the government must prove an intent to derive a private financial gain, *see United States v. Munoz*, 412 F.3d 1043, 1046–47 (9th Cir.2005), but that where a defendant is charged as an aider and abetter, as is the case here, it is sufficient for the government to prove that the defendant intended to benefit a principal and not necessarily himself. *See United States v. Tsai*, 282 F.3d 690, 697 (9th Cir.2002).