966 F.2d 1444
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Larry BLANDING, Defendant-Appellant.
 No. 91-5871.
 United States Court of Appeals,
Fourth Circuit.
 Argued: May 7, 1992
Decided: June 22, 1992
 
 Argued: Daniel Ezekiel Martin, Sr., Martin, Gailliard & Martin, Charleston, South Carolina, for Appellant.
 John Michael Barton, Assistant United States Attorney, Columbia, South Carolina, for Appellee.
 On Brief: E. Bart Daniel, United States Attorney, Columbia, South Carolina, for Appellee.
 Before WILKINSON, Circuit Judge, CHAPMAN, Senior Circuit Judge, and KELLAM, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 Larry Blanding was convicted of conspiracy to violate the Hobbs Act (18 U.S.C. § 1951) and two substantive violations of the same statute. He appeals these convictions claiming (1) that the evidence was not sufficient to sustain any of the convictions, (2) that there was not sufficient proof of interference with interstate commerce to sustain a conviction under the Hobbs Act, and (3) that the failure of the trial judge to instruct the jury that there must be a specific quid pro quo to support a conviction under the Hobbs Act when an elected official receives money that he claims to be a campaign contribution was error.
 
 
 2
 We hold that there was sufficient proof of the necessary nexus between the defendant's acts and an effect upon interstate commerce to satisfy the jurisdictional predicate of the Hobbs Act and that there was sufficient evidence to sustain the convictions. However, the jury instruction given in this case is defective in light of McCormick v. United States, 59 U.S.L.W. 4474 (1991), which was decided subsequent to the jury verdict. Therefore, the judgments of conviction are reversed, and the case is remanded for further proceedings consistent with this opinion.
 
 I.
 
 3
 This is the second* appeal arising from "Operation Lost Trust," which was the code name used by the FBI in its investigation of corruption within the South Carolina General Assembly. The convictions of Larry Blanding resulted from payments made to him, while he was an elected member of the South Carolina House of Representatives, on March 8, 1990, and May 8, 1990, by Ronald L. Cobb, who was acting as a paid confidential informant for the FBI. The FBI created a scam operation that focused on a House of Representatives bill which would legalize pari-mutuel betting at race tracks. Cobb was provided an office in the AT & T building across the street from the South Carolina State House, and a suite at the Town House Hotel. Both the office and the suite were under video and audio surveillance. Videotapes of Cobb making cash payments to Blanding were introduced into evidence. The prosecution charged, and the jury found, that the receipt of these payments violated the Hobbs Act. Blanding did not testify, but it was the theory of his defense that the payments were made by Cobb and received by him as campaign contributions, and as such they did not violate any state or federal statute.
 
 
 4
 Cobb had first approached Luther L. Taylor, while Taylor was a member of the South Carolina House of Representatives and paid him to support the pari-mutuel bill. Cobb agreed to pay Taylor additional sums for any other members of the General Assembly, recruited by Taylor, who would accept money in exchange for their support of the pari-mutuel bill. Taylor advised Cobb that Blanding"will play ball" and that Taylor and Blanding "had done some things together before."
 
 
 5
 Later, Taylor advised Cobb that Blanding was "ready to get [his] ticket," which Cobb testified meant to him that Blanding was ready to be paid. Cobb met with Blanding later that day and explained to Blanding that he wanted Blanding's vote in support for the betting bill. Blanding responded: "Well, what can you do for me?" Cobb agreed to pay him $500 and arranged to meet him the following day to make the payment. That evening, Taylor came to Cobb and advised that Blanding "wasn't comfortable with the $500 and that he [Blanding] felt he should get more." Cobb advised Taylor that he would pay Blanding $1,000. The following day Blanding was accompanied by Taylor when he met with Cobb and Cobb paid Blanding $1,000 in cash. This was the payment of March 8, 1990, which is one of the substantive violations of the Hobbs Act for which Blanding stands convicted. The other substantive violation involved a payment of $300 by Cobb to Blanding to assure his continued support of the parimutuel bill. This payment was made on May 8, 1990.
 
 II.
 
 6
 In Taylor, we set forth in considerable detail the jury instructions given in that case, which in all pertinent aspects are identical to those given to the Blanding jury. We examined the instructions in light of McCormick and concluded that they were fatally defective because under such instructions the jury could find the defendant guilty by application of the wrong standard. The instruction stated that the inducement to make the payment to an elected official could be established by proof of any of the following:
 
 
 7
 One. Proof of a quid pro quo.
 
 
 8
 Two. Proof of a request, demand or solicitation no matter how subtle.
 
 
 9
 Three. Proof of custom or expectation of receiving payment such as might have been communicated by the nature of the public official's prior conduct of his office.
 
 
 10
 Or Four. Reliance on a system of expecting payment in exchange for public favors if the public official establishes or acquiesces in the system and the person making the payment is aware of the expectation.
 
 
 11
 A finding of inducement for the payment under either Nos. Three or Four above, would clearly be insufficient to establish extortion under the Hobbs Act in light of McCormick. As we stated in Taylor, No. 90-5913, slip opinion at 8,
 
 
 12
 The charge is prejudicial error because the jury could find the defendant guilty under the wrong standard. It is settled law that "a general verdict must be set aside if the jury was instructed that it could rely on any of two or more independent grounds, and one of those grounds is insufficient, because the verdict may have rested exclusively on the insufficient ground." Zant v. Stephens, 462 U.S. 862, 881 (1983). While the jury may have found that there was a quid pro quo supporting the payment from Cobb to Taylor, we may not assume this.
 
 
 13
 Taylor, F.2d at .
 
 
 14
 Although the trial judge did charge that the defendant must be acquitted if the jury found that he accepted the money reasonably believing it to be a legitimate campaign contribution, this does not cure the defect mentioned above, because the jury could have based its conviction on one of the unacceptable alternate grounds provided in the instructions. Payment must be made "in return for an explicit promise or undertaking by the official to perform or not to perform an official act." McCormick, 59 U.S.L.W. at 4478. This principle was not adequately set forth in the instructions given to the Blanding jury.
 
 III.
 
 15
 The evidence presented in Blanding's case as to the interference with interstate commerce was the same as that presented in Taylor, which we have found to be sufficient for reasons adequately set forth in Taylor and which we adopt for the purposes of this opinion.
 
 IV.
 
 16
 Blanding argues that the evidence is insufficient to establish that the money he received from Cobb was connected to the performance of an official act by him and that his conversations with Cobb do not support such a finding, primarily because he claims that he had always been a supporter of the pari-mutuel bill and that no monetary payment was necessary nor expected nor paid to receive his initial or continued support.
 
 
 17
 In viewing the evidence in the light most favorable to the government, as we are required to do, Glasser v. United States, 315 U.S. 60, 80 (1942), we find that there is ample evidence to support Blanding's convictions.
 
 
 18
 An elected official's prior support of a particular bill does not insulate him from a claim of extortion, if he solicits or accepts money from another in exchange for an explicit promise or undertaking to support or continue supporting such bill. The evidence supports a finding that Taylor recruited Blanding to join the conspiracy to violate the Hobbs Act and that Blanding accepted money from Cobb in exchange for Blanding's support, and later for his continued support, of the pari-mutuel betting bill. The testimony of Cobb and the tapes of his meetings and conversations with Blanding are sufficient to show that Blanding indicated his willingness to support the bill and that he made a clear demand for some form of payment when he asked, "Well, what can you do for me?" and later accepted $1,000 in cash, after sending Taylor to advise Cobb that a payment of $500 was not sufficient. Blanding did not report either of the payments he received from Cobb as campaign contributions, and when he was first interviewed by the FBI he denied receiving cash from any lobbyist during the 1990 legislative term.
 
 
 19
 Viewing the evidence in the light most favorable to the prosecution, the conversations and the payment of an additional $500 on May 8, 1990, were also sufficient to prove an additional violation of the Hobbs Act.
 
 
 20
 The judgments of conviction are reversed, and this matter is remanded to the district court for further proceedings consistent with this opinion.
 
 REVERSED AND REMANDED WITH INSTRUCTIONS
 
 
 *
 The first appeal was United States v. Taylor, No. 90-5913 (4th Cir. May 29, 1992), which resulted in a reversal because the jury instructions were in conflict with McCormick v. United States