UNITED STATES of America,
Plaintiff,

v.

Timothy WILLIAMS, Defendant.

Nos. 92 CR 1131 ILG, 97 CV 2150 ILG.

United States District Court,
E.D. New York.

May 30, 2001.

Judy Philips, Assistant U.S. Attorney, Washington, DC, for plaintiff.

Cheryl J. Sturm, Westtown, PA, for defendant.

## MEMORANDUM & ORDER

GLASSER, District Judge.

On April 18, 2001, the Court of Appeals for the Second Circuit vacated and remanded for further proceedings a sentence imposed on the defendant approximately eight years ago on November 5, 1993, for possession with intent to distribute cocaine base (crack) and for three gun-related offenses. That sentence was reimposed (as will be hereafter explained) on June 27, 2000. 247 F.3d 353 (2d Cir.2001). In vacating and remanding for further proceedings this Court was directed to clarify the sentence by specifying the amount of cocaine Williams possessed with intent to distribute and the amount he intended for personal use. Because that decision, in this Court's view, has significant implications for district courts in the Circuit, an extended discussion of the evolution of the case which brings it to this point is important for an understanding of those implications.

A "no-knock" warrant to search the defendant's apartment was issued by a judge of the New York Criminal Court, Kings County and executed by officers of the New York Housing Authority Police Department on August 25, 1992. A search of

the apartment yielded a small arsenal of weapons including a loaded Mossberg 12-gauge shotgun next to a bed; a loaded Glock .9 mm semi-automatic pistol and a loaded Davis .380 caliber pistol underneath the mattress; a loaded Ruger .22 caliber pistol in the night stand next to the bed; and a loaded Raven Arms .25 caliber semi-automatic pistol in a dresser drawer, all in the master bedroom. Next to the Raven Arms gun was a bag containing cocaine. Also in that bedroom were a triple-beam scale and a bullet-proof vest behind the headboard of the bed. In other parts of the apartment were three bags of crack vials, 68.9 grams of crack cocaine with a purity of between 77% and 86%, 16.0 net grams of cocaine and 2.009 net grams of marijuana and strainers on which were a white residue. He was immediately arrested and detained pending trial.

Following a two day jury trial on February 8 and 9, 1993, Williams was found guilty of possession with intent to distribute cocaine base in violation of 21 U.S.C. § § 841(a)(1) and 841(b)(1)(A); possession of a firearm with an obliterated serial number in violation of 18 U.S.C. § 922(k); possession and use of a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1); and possession of a firearm after being convicted of a felony in violation of 18 U.S.C. § 922(g)(1).

Of special significance to the ultimate issue addressed by this opinion is this brief excerpt from the testimony of Robert Berger, a Special Agent with the Bureau of Alcohol, Tobacco and Firearms, who interviewed the defendant shortly after his arrest.

Q. Did you ask him about anything other than the firearms?

A. Yes. Then I began to ask him about his drug dealing operation.

Q. What did he tell you about that?

A. I asked him where he was buying it. He told me he was buying it from a pool hall in East New York.

Q. When you say it, could you be more specific?

A. He said he was buying cocaine powder and that he would cook it up himself with crack. He would, you know, weigh it, package it, *and pretty much sell it himself.*

He said he was buying it about one or two times a week and one or two ounces at a time.

Q. Did he say—did you ask him anything else?

A. He asked—he said his wife had nothing to do with it. That she didn't know what was going on. I asked him what he was doing with the money, and he said that the money he was making he was just spending on the wife and kids. Buying them jewelry and clothes.

Q. Just to be clear, did he specify what money he was referring to?

. . .

A. *The money he was making from selling drugs.*

Tr. at 120–121 (emphasis added).[1]

Of particular relevance to this decision is that portion of my charge to the jury which was as follows:

First thing you must determine is whether the defendant possessed cocaine base. The government must prove that what the defendant was charged with, possessing with intent to distribute was, in fact, cocaine base.

The government doesn't have to prove that the defendant possessed any specific quantity of cocaine base. It is suffi-

---

1. Tr. refers to the transcript of the trial.

cient if the government has proved that the defendant possessed cocaine base with intent to distribute it regardless of what the quantity was.

Tr. at 260.

*      *      *      *      *      *

If you find that the defendant possessed cocaine base, you find that he knew he possessed cocaine base, the third element which the government must prove beyond a reasonable doubt is that he possessed those drugs with the intent to distribute.

The word "distribute" in this context simply means to deliver, hand over to, pass on to somebody else or to cause to be handed over or passed on to somebody else, to attempt to do so.

To prove intent to distribute, the government has to prove beyond a reasonable doubt that the defendant had control over the drugs with the state of mind, with the purpose to deliver them, pass them on, turn them over to somebody else. And the same considerations that apply to your determination as to whether he knew he possessed drugs will apply to your determination concerning his intent to distribute.

You can't read a defendant's mind. You have to draw inferences from a defendant's behavior.

You may not convict the defendant unless those inferences persuade you beyond a reasonable doubt that he intended to distribute the drugs.

When I say that you must find that he intended to distribute the drugs, that doesn't mean that you have to find that he intended personally to distribute the drugs, it is enough if you find that he intended to cause or assist the distribution of the drugs by anybody else.

*What you are determining basically is whether the cocaine base was for the defendant's personal use or was it for the purpose of distribution.*

It is often possible to make that determination from the quantity of drugs, which have been found in the defendant's possession.

And possession of a large quantity of cocaine base doesn't necessarily mean that the defendant intended to distribute it. Just as it is possible that a defendant who possessed the small quantity of cocaine base may have intended to distribute it.

*In deciding whether the defendant intended to distribute cocaine base, again, consider all of the evidence, which has been presented during the course of the trial.*

Tr. at 264–265 (emphasis added).

In commenting upon my charge, the Court made reference to that portion of it in which I instructed the jury that "the government does not have to prove that the defendant possessed any specific quantity of cocaine base. It is sufficient if the government has proved that the defendant possessed cocaine with intent to distribute it, regardless of what the quantity was," and then wrote: "In light of this instruction, it was error for the district court to rely on the jury verdict as the basis for a finding that Williams intended to distribute more than 50 grams of cocaine base." 247 F.3d at 359. I did not rely on the jury verdict as a basis for finding the *quantity* of cocaine base possessed by Williams with intent to distribute. I did rely upon the jury verdict as a basis for finding the *intent* with which Williams possessed the cocaine base, intent being an element of the offense which must be submitted to and found by the jury beyond a reasonable doubt. The bases for my finding the amount of crack cocaine Williams possessed with the requisite intent required

by § 841 will be, as directed, clarified hereafter.

The statutory sentencing provision for his possession with intent to distribute cocaine base was a minimum imprisonment term of 20 years and a maximum of life, 21 U.S.C. § 841(b)(1)(A); for possession of the Mossberg shotgun and the Glock pistol with an obliterated serial number, the maximum imprisonment term was 5 years; for possession of the firearms in connection with the drug offense, a mandatory term of 5 years required to run consecutively to any term of custody imposed; for possessing firearms as an ex-felon, a maximum term of imprisonment of 5 years.

Having been found to be in possession of 68.9 net grams of cocaine base, 16.0 net grams of cocaine and 2.009 net grams of marijuana, his base offense level was 32. His total offense level was ultimately found to be 31, having been charitably credited with acceptance of responsibility, notwithstanding that he went to trial, and being in a criminal history category of III, the Guideline range was 135–168 months.

Also particularly significant to memorialize here for an appreciation of the discussion to follow are these excerpts from the presentence report (PSR) which was reviewed by counsel and by the defendant and to which no objection or exception was taken.

Regarding his drug operation, the defendant advised that he was buying approximately one or two ounces of powder cocaine about twice per week. He said he was buying the cocaine in its powder form from a pool hall in East New York and that he was "cooking it" (to the crack form) himself. *The defendant reported that he would then vial it himself and sell it.* The defendant reported

that he had no formal organization and did all the work himself.

PSR at p. 4, ¶ 5 (emphasis added).

In Part C, *Offender Characteristics* under the heading of *Substance Abuse,* paragraphs 46 and 47 of the PSR read as follows:

46. The defendant reports that he began "snorting cocaine" at age 18 or 19 escalating to the use of crack and intra nasal use of heroin by age 23. In approximately 1988, following an arrest, the defendant reports being admitted to Kings County Hospital for detox followed by outpatient therapy at the Daytop Drug Treatment Program. However, Daytop was unable to locate any records confirming that the defendant was treated by their agency.

47. The defendant reports that he remained drug free for about one year but then returned to "snorting" cocaine and heroin. He reports that he continued using these drugs until March of 1990 when he was readmitted to Kings County Hospital. *Following his release, the defendant reports that he has been drug free except for smoking marijuana approximately two times per month and the occasional use of alcohol.* (Emphasis added).

He was sentenced on November 5, 1993, to a mandatory term of imprisonment of 240 months for violation of 21 U.S.C. § 841; 60 months for violation of 18 U.S.C. § § 922(k) and 922(g)(1), to be served concurrently with the sentence of 240 months; and 60 months for the violation of 18 U.S.C. § 924(c)(1), to be served consecutively as required by statute. A ten year period of supervised release and a special assessment of $200 were added to the term of imprisonment.

He appealed his conviction and sentence asserting that inculpatory statements he made upon arrest and thereafter should

have been suppressed; that the evidence supporting his conviction for violating 18 U.S.C. § 922(k) was insufficient; and that the charge of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) should have been severed. On October 6, 1994, his conviction was affirmed by summary order issued by the Court of Appeals which noted "that the evidence at trial was so substantial that Williams could not have been prejudiced by the joinder of the ex-felon count." 40 F.3d 1236 (1994).

Neither during his trial, in his appeal to the Court of Appeals following his conviction, his notice of motion, nor in his memorandum of law in support of it, was there a claim or suggestion that any portion of the drugs which were seized were destined for his personal use.

On April 24, 1997, approximately 2½ years after his conviction and sentence were affirmed, Williams filed a petition pursuant to 28 U.S.C. § 2255 seeking an order to vacate, set aside, or correct his sentence contending that; (1) his conviction for using and carrying a firearm in connection with a drug offense in violation of 18 U.S.C. § 924(c)(1) should be vacated in light of *Bailey v. United States,* 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995); (2) he should be granted a new trial on the remaining three counts; (3) the prior felony information increasing the statutory minimum sentence on the drug count was invalid; and (4) his trial counsel's failure to challenge the "no-knock" provision of the search warrant rendered his assistance ineffective. He also contended that should he be re-sentenced, the

Guideline for cocaine powder and not cocaine base should be used.

In an opinion dated June 25, 1997, familiarity with which will be assumed, after taking cognizance of *Bailey,* I forewent the temptation to consider the growing volume of cases requiring a determination of the applicability of the "carry" prong of 18 U.S.C. § 924(c)(1) to an almost infinite variety of fact patterns in view of the decisions in this Circuit which led me to conclude that Williams' conviction of that Count must be vacated and that he must be returned for re-sentencing. In all other respects his petition was denied.[2]

In light of that determination of the defendant's § 2255 petition, he was returned to court to be re-sentenced upon the remaining three counts, namely, Count One—the violation of 21 U.S.C. § 841; Count Two—the violation of 18 U.S.C. § 922(k); and, Count Four—the violation of 18 U.S.C. § 922(g)(1). The PSR submitted in connection with his original sentence was again before the Court supplemented by an addendum which addressed the belated objections to that report.

In this submission of that PSR the probation department urged that the defendant no longer be credited with acceptance of responsibility. It based its position on his post-conviction challenge to the jury's finding of guilt and his challenge to the identity and quantity of drugs found in his possession, challenges which are inconsistent with the application of U.S.S.G. § 3E1.1. In urging this view, the probation department also confessed that it erred in applying that guideline in the PSR submitted to the Court when he was initially sentenced.

---

**2.** The United States Attorney was directed to obtain the appearance of the defendant by appropriate writ for resentencing and to advise the Court of his appearance. That the Court's direction was not followed was later

called to the Court's attention by the defendant. Remedial steps were promptly taken to have the defendant produced. This is by way of explanation of the "unclear error" referred to in footnote 1 of the Circuit Court's opinion.

The defendant filed new objections to that PSR only one of which is relevant to the Circuit Court's direction in remanding the matter to this Court to clarify "what quantity of drugs is relevant to Williams' § 841 conviction," that is, to "clarify" what portion of the drugs seized from Williams was intended for his personal use.

In paragraph 3 of his Objections to the PSR, the defendant asserts:

Page 3, paragraph 2 of the PSI states that Williams possessed with intent to distribute crack cocaine. However, page 12, paragraphs 46–48 state that Williams consumed drugs. Accordingly, the government must prove (a) the identity of the controlled substance and (b) drug quantities intended for distribution. Drugs intended for personal consumption must be subtracted from total drug quantity to arrive at the figure used to compute the mandatory minimum and the Guideline range.

In paragraph 6 of that page, he asserts: Page 4, paragraph 5 of the PSI states that Williams acknowledged buying cocaine and cooking it into crack. Williams is a drug addict. He purchases drugs and sells drugs to support his habit. He is not a chemist. The government should be required to show the substance was crack cocaine.

Putting aside the absence of any suggestion, let alone evidence adduced at trial that he bought and sold drugs to support his habit and the frivolous assertion that the government should be required to show the substance was crack given the defendant's own statements set out above that it was, and the uncontested laboratory reports received in evidence that it was, egregiously misleading is the assertion that he was a drug addict at the time of his arrest and that paragraphs 46–48 of the PSR confirm it. Paragraphs 46 and 47 of that report are reproduced above and in defendant's own words, he reports that he has been drug-free since his release from Kings County Hospital to which he was admitted in 1990. He was obviously no longer in Kings County Hospital when arrested in 1992.

The defendant's effort to avoid his own declaration that he was drug-free is hinted at in a letter from his counsel dated June 15, 2000, replying to the government's response to his objections, which reads in part:

The presentence report compels the conclusion that Williams was a drug abuser and that he was in denial about his addition(sic) (PSR, paragraphs 46, 47, 48).

Letter from Cheryl J. Sturm, dated June 15, 2000.

Paragraph 48 of the PSR reads as follows:

48. According to a local probation report written in 1988, the defendant was referred to detox by the Department of Substance Abuse Services following a referral made by the Probation Department. It is unclear whether the defendant actually entered treatment and medical records have not yet been received by our department from Kings County Hospital to verify this information. *At the time the probation report was written in 1988, it was felt that the defendant was in denial of his problem and was viewing treatment as a means of avoiding incarceration.* (emphasis added).

The assertion that Williams was a drug abuser when he was arrested in 1992 flatly contradicts his profession of being drug-free at that time, and the suggestion that he was then in "denial" bottomed upon what a probation officer "felt" in a report in 1988 is hardly persuasive.

The defendant was resentenced on June 27, 2000, to the same sentence as originally imposed on November 5, 1993. In response to counsel's offer "to put Mr. Williams on the stand, if the Court wants to hear testimony on whether he was an addict at this time and what percentage of that he was intending to consume," the Court said, "I don't intend to retry that case" and went on to hold as follows:

With respect to the identity and quantity of the controlled substance—certainly the identity of the controlled substance, you are withdrawing that. And insofar as the quantity is concerned, I think the record of this case is pretty clear that the quantity for which Mr. Williams was being held responsible was quite clearly a quantity which was for distribution and not for personal use.

I think the testimony of Special Agent Berger, referring not only to what it was that was found but also to Mr. Williams' own statements at the time, leave very little doubt but that the drugs which were taken from Mr. Williams were not for personal use but were for purposes of distribution.

I also had I think quite specifically instructed the jury on the difference between drugs which are possessed for purposes of personal use and drugs which are possessed for purposes of distribution.

I think I indicated to them that the amount of drugs may be a significant factor, although it doesn't necessarily mean that the amount of the drugs would always result in a finding that it was not for personal use and so on. And the jury made a finding that the defendant was guilty of 841(b)(1)(A), possession with the intent to distribute. And I don't intend to retry that and I think there's very little doubt but that the result is correct.

Tr. Resentence at 3–5.

### *Discussion*

In vacating and remanding the sentence imposed on June 27, 2000, directing this Court to "clarify" the amount of drugs Williams intended for personal use as opposed to distribution, the Court relied upon two cases, each of which, it is respectfully suggested, are clearly distinguishable and have no application to this one.

The first is *United States v. Kipp*, 10 F.3d 1463 (9th Cir.1993). Kipp *pled guilty* to possession with intent to distribute approximately 117.25 grams of cocaine. In the plea agreement, the parties expressly reserved the right to argue the amount of cocaine for sentencing. At sentencing Kipp argued that he possessed most of the drugs for personal use and only a small quantity for distribution and, therefore, the base offense level should reflect only the amount possessed with the intent to distribute. The district court held an evidentiary hearing to determine the amount of drugs involved for the purpose of calculating the base offense level. Kipp admitted to possessing 80 to 90 grams of cocaine and argued that he possessed all but 5 or 6 grams for his own personal use and that the balance which he possessed with intent to distribute was relevant for sentencing purposes. "While the district court acknowledged Kipp's claim that he possessed most of the drugs for personal use rather than for distribution, the court noted that it 'simply cannot see how those amounts are severable.'" *Id.* at 1465. The Court reversed and held that in pleading guilty, Kipp was not admitting that he possessed any particular quantity of drugs with intent to distribute and expressly reserved his right to argue quantity at sentencing.

The district court, on remand, was directed to find the quantity of cocaine Kipp possessed with intent to distribute by a preponderance of the evidence.

The second case upon which the Court relied is *United States v. Wyss*, 147 F.3d 631 (7th Cir.1998). A reading of this cursory opinion may obscure the context in which it was rendered. The opinion begins with these two sentences: "The defendant was convicted of possession of marijuana with intent to distribute it, in violation of 21 U.S.C. § 841(a) .... The only non-frivolous issue presented by this appeal is whether the purchase of cocaine for his personal consumption, rather than for sale, should have been considered as conduct relevant to the marijuana conviction and therefore used to enhance its sentence." *Id.* at 632. The opinion contains no indication as to whether the conviction of the defendant was after a trial by jury or following his plea, hence the obscurity. The distinction is vital.

I have obtained the docket sheet of that case from the United States District Court for the Western District of Wisconsin of which I take judicial notice. Rule 201, Fed. R. Ev. The docket sheet reflects that the defendant "Pled guilty after Not Guilty Plea." The transcript of the proceeding, of which judicial notice is also taken, reflects the same, viz: "In mitigation I do recognize that the defendant ... pled guilty at an early date and is entitled to the three points for acceptance of responsibility." Tr. at 9. It is vitally significant to note too, that the decision reports that *"Wyss testified that he consumed at least half the cocaine that he bought and there was no contrary evidence.* In these circumstances, we do not think that the district judge on remand should be permitted to determine that more than half the cocaine was relevant to the offense for which he

was convicted." 147 F.3d at 633 (emphasis mine).

The conclusion that *Kipp* and *Wyss*, upon which the Circuit Court relied, are inapposite, is irresistible. In each, the defendant pleaded. In *Kipp*, the defendant expressly reserved the right to argue the amount of the drugs for sentencing in his plea agreement and the Court acknowledged Kipp's claim that he possessed most of the drugs for personal use.

In *Wyss*, too, the defendant pleaded and testified at sentencing regarding the amount of drugs he personally consumed and there was no evidence to contravene his testimony.

In this case, the defendant proceeded to trial. An essential element of the offense which the government was obliged to prove beyond a reasonable doubt was that Williams possessed the cocaine base with the intent to distribute it. The jury was explicitly instructed that to convict Williams they must be satisfied that he possessed the drugs with that intent and that he did not possess it for personal use. In finding Williams guilty, the jury was satisfied beyond a reasonable doubt that he had the intent the statute required. The only avenues for disturbing that finding were a motion pursuant to Rule 29 Fed. R. Cr. P. or, on appeal that the evidence was insufficient to support his conviction. His Rule 29 motion was denied, and on appeal he never argued the insufficiency of evidence to support the jury's finding that he violated 21 U.S.C. § 841(a)(1).

### A. *THE GUIDELINES*

*Kipp* and *Wyss*, based their respective decisions on U.S.S.G. § 1B1.3(a)(2), which provides for the relevant conduct to be considered in determining the guideline range. That section provides that "solely with respect to offenses of a character for

which § 3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and 1(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction." In *Kipp,* for example, the Court held that "Drugs possessed for mere personal use are not relevant to the crime of possession with intent to distribute because they are not 'part of the same course of conduct' or 'common scheme' as drugs intended for distribution." 10 F.3d at 1465–66. *Wyss* reached the same result, citing *Kipp,* 147 F.3d at 632, as did the Court of Appeals here. 247 F.3d at 358.

It is with the continuing cognizance of the deference owed by this Court to a decision of the Appellate Court, *see United States v. Seltzer,* 127 F.Supp.2d 172, 175 (E.D.N.Y.2000), that I dare to suggest that in deciding that U.S.S.G. § 1B1.3(a)(2) was applicable to *Williams,* it was mistaken.

U.S.S.G. § 3D1.2, cross-referenced in § 1B1.3(a)(2), is captioned "Groups of Closely Related *Counts.*" It is found in U.S.S.G. Chapter 3, Part D headed Multiple Counts. Each subdivision of § 3D1.2 refers to "*counts*" with the exception of (d) which contains no reference to the words "count" or "counts." However, the Commentary and Application Notes 6, 7 and 8 to § 3D1.2 are instinct with the sense that this Grouping Guideline is applicable to cases in which multiple counts or conspiracy to commit several offenses are charged.

It is this Court's view that the applicable, relevant Guideline is U.S.S.G. § 1B1.3(a)(1)(A), which provides that the base offense level shall be determined by considering "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant." Application Note 2(ii) to that section teaches that

"With respect to offenses involving contraband (including controlled substances), the defendant is accountable for all quantities of contraband with which he was directly involved...." That teaching of the intended reach of § 1B1.3(a)(1)(A) fits this case precisely. The search of Williams' apartment yielded amounts of cocaine base, cocaine and marijuana— "quantities of contraband with which he was directly involved" and evidenced conduct clearly relevant to a determination of the base offense level. There is no other act, no other omission, no "common scheme or plan" to be considered as relevant that are outside the boundary of the offense of conviction, namely, that on August 25, 1992, Timothy Williams possessed cocaine base (crack).

In addition and more pertinent to this case, the Guidelines compel the conclusion that simple possession of cocaine base, whether or not for personal use, which is made unlawful by 21 U.S.C. § 844 is "part of the same course of conduct" even if § 1B1.3(a)(2) were applied. The Guideline applicable to a violation of 21 U.S.C. § 841(b)(1)(A), possession with intent to distribute, is § 2D1.1. The Guideline applicable to a violation of 21 U.S.C. § 844 (simple possession) is § 2D2.1 subparagraph (b)(1) of which provides in relevant part: "If the defendant is convicted of possession of more than 5 grams of a ... substance containing cocaine base, apply § 2D1.1 ... as if the defendant is convicted of possession of that ... substance with intent to distribute." The Guidelines aside, simple possession is a lesser included offense of possession with intent to distribute. If "[a] lesser included offense is simply an offense that requires proof of only a subset of the elements of the greater offense," *United States v. Hill,* 196 F.3d 806, 808 (7th Cir.1999), then clearly simple possession of crack is a lesser included

offense of possession with intent to distribute crack. *See, e.g., United States v. Gore,* 154 F.3d 34, 46 (2d Cir.1998) ("[W]e have consistently held that simple possession in violation of 21 U.S.C. § 844 is a lesser included offense of possession with intent to distribute."); *United States v. Monk,* 15 F.3d 25 (2d Cir.1994); *United States v. Garcia–Duarte,* 718 F.2d 42, 47 (2d Cir. 1983). To say that the two are not "part of the same course of conduct" strikes me as being neither good logic nor good law.

## B. *A DUE PROCESS CONCERN*

The direction given this Court to determine the quantity of drugs Williams intended for personal use gives rise to a question with due process implications. That concern stems from the importance of distinguishing between a determination of the *kind and amount* of drugs for which a defendant should be held accountable and a determination of his *intent* with regard to those drugs.

At the time Williams was sentenced (pre-*Apprendi v. New Jersey,* 530 U.S. 466, 476, 120 S.Ct. 2348, 2355, 147 L.Ed.2d 435 (2000)) it was for the judge to determine the amount and kind of drugs which were not elements of the offense of possessing a controlled substance in violation of 21 U.S.C. § 841(a)(1) and was not required to be proved at trial beyond a reasonable doubt. Rather it was for the judge to make that determination by a preponderance of the evidence at sentencing. *Edwards v. United States,* 523 U.S. 511, 513–14, 118 S.Ct. 1475, 140 L.Ed.2d 703 (1998). The holding of *Edwards* that it is for the judge alone to determine the kind and quantity of drugs when imposing sentences short of the statutory maximum was not affected by *Apprendi. See United States v. Garcia,* 240 F.3d 180, 183 (2d Cir.2001); *Talbott v. Indiana,* 226 F.3d 866, 869–70 (7th Cir.2000). The *intent*

with which the defendant possessed the drugs is, however, an element of the offense and the government bears the burden of proving that intent beyond a reasonable doubt when the defendant elects a trial. *United States v. Martinez,* 54 F.3d 1040, 1043 (2d Cir.1995). In *Apprendi,* the Supreme Court decided that "any fact (other than a prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." 530 U.S. at 476, 120 S.Ct. 2348. The intent with which the defendant possessed drugs would increase the maximum penalty that would be imposed for the simple possession of drugs in violation of 21 U.S.C. § 844. In remanding the case to this Court to determine the quantity the defendant *intended* to possess for personal use, this Court is being directed to determine an element of the offense which a properly instructed jury was required to and has already made beyond a reasonable doubt.

As has already been observed, this case is distinguishable from *Kipp* and *Wyss* in that Williams elected to put the government to its proof at trial. In that event, logic would suggest that the burden of proving the quantity of drugs he intended to possess for personal use was his. It is difficult to conceive how that fact could be proved by the government. The Court in *Wyss* alluded to that when it wrote "Maybe, when the defendant buys drugs both for his own consumption and for resale, he has some burden of producing evidence concerning the amount he consumed—he cannot just say to the government, 'I'm an addict, so prove how much of the cocaine that I bought I kept for my own use rather than to resell.' This we need not decide." 147 F.3d at 633. Our Circuit Court did decide the issue, however, when in *United States v. Martinez,* 54 F.3d 1040, 1043 (2d Cir.1995), *cert. denied*

516 U.S. 1001, 116 S.Ct. 545, 133 L.Ed.2d 448 (1995), it wrote "[T]he government did not have to prove beyond a reasonable doubt the subsidiary fact that Martinez did not use drugs."

Williams elected to stand upon his constitutional right to remain silent at his trial. He never suggested that any portion of the cocaine based seized from his apartment was intended for his personal use either then or when he was sentenced. Indeed, he continued to remain silent for eight years and his belated claim that his possession of crack was thus intended is belied by his declaration that he was drug-free as reported in his PSR to which he took no exception.

■ In making the observation initially that the implications of the decision of the Court of Appeals for district courts are significant, I contemplated that the interpretation of that decision will be seized upon to mean that in prosecuting a defendant for possession with intent to distribute a controlled substance, it will be the government's burden to prove how much of the controlled substance the defendant intended to distribute and how much he intended for personal use, a burden which is obviously impossible to bear and which, as has already been indicated, the Court said the government need not bear. *See Martinez, supra.* Indeed, a careful reading of the cases makes plain that whether a quantity of drugs possessed by the defendant was intended for personal use is a defense for which the defendant bears the burden of proof. *United States v. Monk*, 15 F.3d 25, 26 (2d Cir.1994) ("At trial Monk pressed his defense that he had no intent to distribute the crack, but intended it for his personal use"); *Martinez*, 54 F.3d at 1043 ("In addition, and particularly in light of Martinez's admission that he was not a user, his physical possession of a scale, cut, and a loaded firearm supported

the jury's rejection of his personal-use defense.")

## C. *THE REMAND*

In concluding its opinion the Court of Appeals wrote that:

[T]here is nothing in the record that would permit this court to affirm Judge Glasser's conclusion as to the quantity of cocaine that Williams intended to distribute. As a result, the judgment of the district court must be vacated, and the case remanded for further proceedings. In this respect, we note that, though the defendant has 'no absolute right to present witnesses or to receive a full blown evidentiary hearing' (citation omitted) and hence, the district court is not required to hold a hearing with respect to this issue, it would go a long way toward clarifying what quantity of drugs is relevant to Williams' § 841 conviction if the record were supplemented in this way.

247 F.3d at 359.

■ Accepting the Court's teaching that I am not required to hold a hearing I will not do so but will "clarify" my conclusion concerning the quantity of drugs that are relevant to the defendant's § 841 conviction. I found that the entire quantity of cocaine base seized from his apartment was intended for distribution based upon a record which compelled that conclusion. I am puzzled by the determination by the Court of Appeals that "there is nothing in the record that would permit [that] Court to affirm [my] conclusion as to the quantity of cocaine that Williams intended to distribute," *id.* at 359, given the acknowledgment in *Martinez*, 54 F.3d at 1046 (Calabresi, J., concurring), that a case should be judged "on the basis of the whole evidentiary record ." Nevertheless, in light of its determination, I am obliged to address it by setting out once again the "whole evi-

dentiary record" upon which my conclusion was based.

1. Upon his arrest, Williams told Special Agent Robert Berger that he cooked up himself the cocaine powder that he bought and sold it himself and that with the money he was making from selling drugs he would buy jewelry and clothes for his wife and children.

As in *Martinez,* Williams' own statement "can readily support a jury's finding that he was not a user." *Id.* at 1048.

2. Williams never testified, or offered any evidence at trial, or asserted when he was sentenced some eight years ago, or on appeal from his conviction, that he was a drug user who possessed the drugs for his personal use. *Id.* at 1042.

3. Williams never took exception or objected to his psr which reflected his statements that he cooked the crack himself, placed it into vials himself and sold it. Received in evidence were three bags of crack vials.

4. The possession of a triple-beam scale, strainers, a bullet proof vest and a virtual arsenal of guns.

Because a gun is generally considered a tool of the trade for drug dealers it is also evidence of intent to distribute. "Moreover [Williams'] possession of the loaded firearm, irrespective of whether he was or was not a user, and especially in the context of this case, by itself provided strong evidence of his intent to distribute." *Id.* at 1043 and cases cited there.

5. Williams' acknowledgment reflected in his presentence report that he was drug-free except for the occasional use of alcohol and smoking marijuana two times per month. I note once again, that he neither excepted nor objected to that acknowledgment.

6. The not insignificant amount of crack (68.9 grams) and cocaine (16.0 grams) together with the other evidence was, in this court's view, more than sufficient to establish an intent to distribute.

Referring to *Martinez* again, 54 F.3d at 1043, "[W]here there is other evidence of ... intent to distribute, possession of as small a quantity as 4 or 5 grams is sufficient to establish an intent to distribute." (citations omitted).

7. The testimony of Special Agent Berger who was qualified as an expert and explained that the equipment seized from the Williams apartment is used for processing and packaging crack-cocaine and described how it is used for that purpose. He testified that the vials that were seized are commonly used for packaging crack-cocaine and that his is the usual way crack-cocaine is sold on the street. Each vial, he further testified, would normally contain 3 to 5 grains of crack-cocaine and that there are 15.43 grains in a gram. Tr. at 126–131.

The Court would take judicial notice of the mathematical fact that 68.9 grams of crack-cocaine could thus fill approximately 266 vials, hardly a quantity for personal use.[3]

---

**3.** In *Martinez,* 54 F.3d at 1046, the observation was made in footnote 2 of the concurring opinion that "There may be circumstances in which a court might be more willing to take judicial notice of certain facts" because the "defendant's superior access to the facts" makes it "difficult to present proof on a particular issue" and making reference to the "tort doctrine of *res ipsa loquitur.*" Although to be sure, *res ipsa loquitur* is commonly associated with the law of torts, it is simply a form of circumstantial evidence rather than a

8. Viewing the evidence in its totality, the jury was justified in finding beyond a reasonable doubt that Williams possessed the crack and cocaine with an intent to distribute. *Id.* at 1043.

In that regard, the conclusion of the Court in *Martinez, id.* at 1043 that the "jury was entitled to credit the admission by Martinez to Detective Gardner that at the time of his arrest he did not use any drugs over any implication to the contrary that could be drawn from the judgment of conviction entered five years earlier, that prescribed participation in a program of urinalysis testing and if necessary drug treatment" is, as interpolated, exquisitely applicable here, as follows: I was entitled to credit the admission by Williams to Special Agent Berger that he cooked the crack and "vialed" it and sold it himself, and that at the time of his arrest he was drug free over any implication to the contrary that could be drawn from his drug conviction five years prior to his conviction here that prescribed detoxification at Kings County Hospital and outpatient therapy at Daytop Drug Treatment Program. *See* PSR, ¶ 46, *supra.*

As respects the "clarification" I provided of my application of the Guidelines in imposing this sentence, I would make reference to 18 U.S.C. § 3742(e) which "requires a *reviewing court not only to 'accept'* a district court's 'findings of fact,' (unless 'clearly erroneous'), but also to 'give *due deference* to the district court's application of the guidelines to the facts.'" *Buford v. United States,* 525 U.S. ——, 121 S.Ct. 1276, 1279, 149 L.Ed.2d 197 (2001) (Breyer, J.) (emphasis in original).

In the belief that it is peculiarly appropriate here, I set out at some length Justice Breyer's observations in support of his conclusion that: "[i]n light of the fact-bound nature of the legal decision, the comparatively greater expertise of the District Court, and the limited value of uniform court of appeals precedent, we conclude that the Court of Appeals properly reviewed the District Court's ... decision deferentially," *id.* 121 S.Ct. at 1281. After stating "that the special competence of the district court helped to make deferential review appropriate," he went on to write,

As a trial judge, a district judge is likely to be more familiar with trial and sentencing practices in general.... And as a sentencing judge who must regularly review and classify defendants' criminal histories, a district judge is more likely to be aware of which procedures the relevant ... federal courts typically follow. Experience with trials, sentencing, and consolidations will help that judge draw the proper inferences ....

In addition, factual nuance may closely guide the legal decision, with legal results depending heavily upon an understanding of the significance of case-specific details. *See Koon v. United States,* 518 U.S. at 98–99, 116 S.Ct. 2035 (District Court's detailed understanding of the case before it and experience with other sentencing cases favored deferential review) ....

*Id.* 121 S.Ct. at 1280.

A reading of 18 U.S.C. §§ 3742(e)(2), 3742(f)(1) and 3742(f)(2)(A) and (B) gives rise to the question regarding the propriety of the order of the Court of Appeals in

---

"tort doctrine." *See, e.g.,* McCormick on Evidence (5th ed. by Strong 1999) at p. 435 citing Prosser & Keeton, Torts § 40 (5th ed.1984); Mueller and Kirkpatrick, Federal Evidence § 75 (1994). The inference to be

drawn circumstantially from the entire record evidence is irresistible that the drugs seized from Williams' apartment were intended for distribution and not for personal use. The things do, indeed, speak for themselves.

vacating and remanding rather than simply remanding for further sentencing proceedings on the assumption that I may have erred in sentencing Williams by failing to deduct the amount of drugs he belatedly claimed he intended for personal use. The significance of the distinction is that when the case is simply remanded the defendant does not reappear before the Court *de novo* with a clean slate for re-sentencing. When the decision of the district court is vacated and remanded, the defendant does return to the Court with a clean slate and the Guidelines in effect at that time are applied. U.S.S.G. § 1B1.11; *see United States v. Ekhator,* 853 F.Supp. 630, 635–36 (E.D.N.Y.1994).

Unlike *Ekhator,* no change in Williams' sentence was required by applying the guidelines in existence on the date of re-sentencing. Received by the court on that date, however, were defendant's exhibits A–F which were, respectively, a high school equivalency diploma; certificates attesting to the successful completion of courses in industrial sewing; microcomputer applications; beginning typing; advanced typing and business education. Although not specifically articulated, implicit in those submissions was the suggestion that the court consider the defendant's post-sentence rehabilitation for a downward departure. In *Quesada–Mosquera v. United States,* 243 F.3d 685 (2d Cir.2001), the Court decided that a downward departure for that reason was not authorized.

In footnote 9 the Court of Appeals suggested that this court "may wish to wait for the Court's decision in *United States v.*

*Guevara,* No. 00–1133 (argued November 17, 2000) before re-sentencing the defendant. That case raises the same *Apprendi* question that the defendant in this case presents: whether a criminal defendant may be sentenced above the maximum of the applicable Guideline range—but below the statutory maximum provided in § 841(b)(1)(C) based on a finding of drug quantity that has been made by a judge rather than by a jury."

I would be inclined to follow the observation of Judge Learned Hand in *Spector Motor Service, Inc. v. Walsh,* 139 F.2d 809, 823 (2d Cir.1943), who wrote "[It is not] desirable for a lower court to embrace the exhilarating opportunity of anticipating a doctrine which may be in the womb of time, but whose birth is distant; on the contrary I conceive that the measure of its duty is to divine, as best it can, what would be the event of an appeal in the case before us." In discharging my "duty" to divine the appellate response to the *Apprendi* question referenced in that footnote, I would decide that *Apprendi* was not offended for the reasons persuasively discussed in *United States v. Garcia,* 240 F.3d 180 (2d Cir.2001) which addressed that precise question. *See also United States v. Rodgers,* 245 F.3d 961 (7th Cir. 2001).[4]

SO ORDERED.

---

**4.** I have attempted to address the issues which I believed were directly implicated by the remand and leave for this footnote the view that the issue returned to this Court to address is foreclosed by the law of the case doctrine which obliges a Court of Appeals to adhere to its own decision at an earlier stage

of the litigation and precludes re-litigating issues it expressly or impliedly decided. *United States v. Tenzer,* 213 F.3d 34, 39 (2d Cir. 2000). More recently in *United States v. Ben Zvi,* 242 F.3d 89, 95 (2d Cir.2001), the Court noted that "In the context of a remand for resentencing where an appellate court has

already fully considered the merits of the conviction, the trial court generally is foreclosed from reconsidering the underlying merits of the conviction." *See also United States v. Bell*, 988 F.2d 247 (1st Cir.1993) (citations omitted). In affirming Williams' conviction, and finding the evidence against him to be substantial, the Court of Appeals expressly and certainly impliedly, decided the issue which could have been but was not raised then, and is now before the Court.